J-A19037-19

2019 PA Super 325

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| SEAN SEXTON | : | |
| | : | |
| Appellant | : | No. 75 EDA 2018 |

Appeal from the Judgment of Sentence December 14, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-00007512016

BEFORE:   PANELLA, P.J., KUNSELMAN, J., and STEVENS*, P.J.E.

OPINION BY STEVENS, P.J.E.:                    **FILED OCTOBER 28, 2019**

Appellant Sean Sexton appeals from the judgment of sentence entered in the Court of Common Pleas of Philadelphia County on December 14, 2017, following his convictions of Intimidation of Witnesses or Victims, Terroristic Threats with Intent to Terrorize Another and Stalking.[1]  We affirm.

The trial court aptly set forth the relevant procedural history and facts herein as follows:

**PROCEDURAL HISTORY**

> Between May of 2015 and May of 2016, [Appellant] was arrested and charged with various offenses under four separate Bills of Information. At CP-51-CR-0005229- 2015, [Appellant] was arrested on May 4, 2015, and charged with, inter-alia, Rape by Forcible Compulsion[1] and numerous other related offenses. At CP-51-CR-0011605-2015, [Appellant] was arrested on August 5, 2015, and charged with Simple Possession.[2] At CP-51-CR-0000751-2015, [Appellant] was arrested on November 17, 2015, and charged with 1) Intimidation of Witnesses or Victims,[3] 2)

_____

[1] 18 Pa.C.S.A. §§ 4952; 2706(a)(1) and 2709.1, respectively.

_____

\*   Former Justice specially assigned to the Superior Court.

Terroristic Threats with Intent to Terrorize Another[4], and 3) Stalking.[5] At CP-51-CR-0010608-2016, [Appellant] was arrested on May 16, 2016, and charged with Forgery.[6]

On May 18, 2017, by agreement of counsel,[7] [Appellant] proceeded to trial only on the two bills of information relating to the charges of rape and witness intimidation.[8] At the conclusion of his waiver trial, on May 19, 2017, [Appellant] was found guilty on the charges of witness intimidation, terroristic threats and stalking. [Appellant] was found not guilty on all rape related charges.

Prior to the commencement of his sentencing hearing on September 21, 2017, [Appellant] entered into non-negotiated pleas of guilty on the remaining open charges of simple possession and forgery.[9] At the conclusion of his sentencing hearing, [Appellant] was sentenced to a period of confinement in a state correctional facility of 7 to 15 years on the charge of witness intimidation followed by five years['] probation. On charges of terroristic threats, stalking, simple possession and forgery [Appellant] was sentenced to concurrent periods of probation of 5 years each, to be served consecutively to his period of confinement, for an aggregate period of confinement of 7 to 15 years followed by 5 years['] probation.

On September 25, 2017, [Appellant] timely filed a Motion for Post Sentence Relief pursuant to the Pennsylvania Rules of Criminal Procedure, Pa.R.Crim.P. 720(A)(1), seeking an arrest of judgement, [sic] a new trial, or, in the alternative, a reconsideration of his sentence pursuant to Pa.R.Crim.P. 720(B)(1)(a)(ii), (iv) and (v). The [c]ourt, after a hearing held on December 14, 2017, denied [Appellant's] motions seeking a new trial. However, on considering [Appellant's] argument, the [c]ourt modified [Appellant's] sentence, imposing an aggregate sentence of 6 ½ to 13 years['] incarceration followed by 5 years['] probation.

On January 2, 2018, [Appellant] timely filed the instant appeal to the Superior Court of Pennsylvania.[10] On January 8, 2018, this [c]ourt filed and served on [Appellant] an Order pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure, directing [Appellant] to file and serve a Statement of Errors Complained of on Appeal, within twenty-one days of the [c]ourt's Order. On January 15, 2018, [Appellant] timely filed his statement of "Matters Complained of on Appeal."

***

**EVIDENCE AT TRIAL**

The complaining witness, [A.Y.],[2] testified that she had been best friends with [A.L.] since 2013, when they were both in the ninth grade. Eventually, beginning in April of 2015, they drifted apart when [A.L.] went to live with her aunt. During their friendship, she frequently visited [A.L.] at her home on Reed Street in the City of Philadelphia, which she shared with [Appellant]. (N.T., 5/19/17, pgs. 13-17, 25)

[A.Y.] testified that, during their friendship, [A.L.] confided in her stories of being sexually molested by [Appellant]. (N.T., 5/19/17, pgs. 14-18) After [A.L.] eventually reported the assaults, [A.Y.] became a witness involving charges of rape and sexual assault against [Appellant].[11] On April 28, 2015, as part of their investigation into the sexual assault charges, she gave a formal statement to the Special Victims Unit of the Philadelphia Police Department, with regard to their conversations. (N.T., 5/19/17, pgs. 13, 14, 18, 40)

Subsequently, in October of 2015, [A.Y.] testified that, as she approached her normal bus stop on her way to school, she encountered "Graffiti" reading; "[A.L.] is lying about rape." (N.T., 5/19/17, pgs. 21, 24, 46) After this incident, a school friend texted her a picture of "Graffiti" written on the bench at her bus stop, again reading: "[A.L.] is lying about rape." In addition to these two pieces of "Graffiti," she encountered a third piece, written on a trashcan at the bus stop, reading; "Kill Squill." She testified that "Squill" is a "nickname me and [A.L.] had that we called each other. It's in SpongeBob" and that [Appellant] was aware of this. (N.T., 5/19/17, pgs. 21-23, 43, 44, 47, 48)

She also testified that this stop was known to [Appellant], as he "did see me at the 25 bus stop before. He was walking past. He said some of his friends lived near there." (N.T., 5/19/17, pg. 42) She also testified that, being scared by the "Graffiti," she told her mother, who then called the police to report it. (N.T., 5/19/17, pgs. 46, 49, 50)

[A.L.], testified that, after her father's death in 2010, [Appellant] was appointed as a co-guardian and moved into the family home to care for her and her brother. (N.T., 5/18/17, pgs. 49-52, 96) She continued to live in the home with [Appellant] until April of 2015, when she eventually told her aunt that she had been sexually abused by [Appellant]. (N.T., 5/18/17, pgs. 62, 65)

_____

[2] To protect the identity of the victim who was a minor at the time, we have replaced her name and that of her friends and relatives with initials or other generic labels throughout this Opinion.

J-A19037-19

[A.L.] testified that, commencing in 2013, she began confiding the details of this abuse, in [A.Y.]. (N.T., 5/18/17, pgs. 61, 62) She also testified that [A.Y.] had been to her house multiple times and was well known to [Appellant] (N.T., 5/18/17, pg. 77)

Although she did not personally see the "Graffiti," she testified that [Appellant] "was big into graffiti," they had "spray painted my walls" and that she was familiar with and knew [Appellant's] handwriting. Comparing the photographs of the "graffiti" to a note previously written to her by [Appellant], she identified the writing in the "Graffiti" as that of [Appellant]. (N.T., 5/18/17, pg. 72, 73, 75, 78, 135-137, 139)

She also testified that she did not use the bus stop where the "Graffiti" was found, stating that it is used by [A.Y.] every day to go to school. She also identified "Squill" as "a term of endearment. It's a nickname me and my friend had come up [with] for each other. It's actually silly. We were really young, it was freshman year. It's from SpongeBob, Squilliam." It was a nickname she used frequently in her home, in referring to [A.Y.]. (N.T., 5/18/17, pg. 72, 73, 75, 78)

_____
[1] 18 Pa.C.S.A. §3121(a)(1)
[2] 35 Pa.C.S.A. §780-113(a)(16)
[3] 18 Pa.C.S.A. § 4952
[4] 18 Pa C.S.A. §2706(a)(1)
[5] 18 Pa.C.S.A. § 2709.1
[6] 18 Pa.C.S.A. §4101
[7] (N.T., 5/18/17, pgs. 9-12)
[8] CP-51-CR-0005229-2015 and CP-51-CR-0000751-2015
[9] CP-51-CR-0011605-2015 and CP-51-CR-0010608-2016
[10] [Appellant] is only appealing his conviction at 51-CR-0000751-2015 on the charges of witness intimidation, terroristic threats and stalking.
[11] The [c]ourt found [Appellant] not guilty of these charges at CP-51-CR-0005229-2015

Trial Court Opinion, filed 1/23/18, at 1-6.

In his appellate brief, Appellant raises the following Statement of the

Questions Presented:

- 4 -

1. Were the verdicts for Intimidation of a Witness [18 Pa.C.S.A. 4952], Terroristic Threats [18 Pa.C.S.A. 2706] and Stalking [18 Pa.C.S.A. 2709.1] against the weight of the evidence? Did the evidence not support the conclusion that [Appellant] wrote the supposed threats? Was the verdict based on highly speculative and contradictory evidence and not supported by the evidence? Did the verdict violate fundamental due process because the evidence was highly speculative and contradictory and did not support the verdict, thus violating the Due Process Clause of the Fourteenth Amendment of the United States Constitution? - - - Judge Cunningham affirmed his judgment of sentence.

2. Were the verdicts for Intimidation of a Witness [18 Pa.C.S.A. 4952], Terroristic Threats [18 Pa.C.S.A. 2706] and Stalking [18 Pa.C.S.A. 2709.1] not supported by sufficient evidence? Was the evidence too speculative? Did the evidence fail to show who wrote the signs? Did the evidence fail to show who was referred to by "Squill"? Did the verdict violate fundamental due process because the evidence was highly speculative and contradictory and did not support the verdict, thus violating the Due Process Clause of the Fourteenth Amendment of the United States Constitution? - - - Judge Cunningham affirmed the judgment of sentence.

3. Was the sentence of Judge Cunningham of 6 ½ to 13 years of incarceration, plus 5 years of probation excessive and an abuse of discretion? Did this excessive sentence present a substantial issue since it far exceeded the Sentencing Guidelines? Was the sentence extremely harsh under the circumstances and an abuse of the Sentencing Guidelines when there was an offense gravity score of 11 and a prior record score of 0 with a guideline sentencing range of 36 to 54 months of incarceration, plus or minus 12? Was this an abuse of discretion since the sentence of 6 ½ years [to] 23 months was far above the outer limits of the Sentencing Guidelines? Was the sentence abusive since the Assistant District Attorney only asked for 4 to 8 years of incarceration, followed by 5 years of probation, and Judge Cunningham's sentence was 2 years beyond the Assistant District Attorney's suggested sentence? Did Judge Cunningham fail to state adequate reasons in support of his sentence pursuant to 42 Pa.C.S.A. 9721(b)? - - - Judge Cunningham, in the first Petition to Modify and Reconsider, reduced the sentence from 7 to 15 years to 6 ½ to 13 years, and then affirmed the new judgment of sentence and denied the oral Motion to Reconsider the Sentence (see Exhibit "G").

- 5 -

Brief for Appellant at 13.[3]

_____

[3] We remind Appellant that where a Pa.R.A.P. 1925(b) concise statement presents an issue broadly and non-specifically by citing generally to the record, this Court has found the issue to be waived in that such vagueness leaves the trial court in a position to guess what specific issues the appellant intended to raise and, thus, impairs its ability to identify those claims. In doing so, we observed that:

> issues not raised in a Rule 1925(b) statement will be deemed waived for review. An appellant's concise statement must properly specify the error to be addressed on appeal. In other words, the Rule 1925(b) statement must be "specific enough for the trial court to identify and address the issue [an appellant] wishe[s] to raise on appeal." ***Commonwealth v. Reeves***, 907 A.2d 1, 2 (Pa.Super. 2006), ***appeal denied***, 591 Pa. 712, 919 A.2d 956 (2007). "[A] [c]oncise [s]tatement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no [c]oncise [s]tatement at all." ***Id***. The court's review and legal analysis can be fatally impaired when the court has to guess at the issues raised. Thus, if a concise statement is too vague, the court may find waiver.

***Commonwealth v. Scott***, 212 A.3d 1094, 1112 (Pa.Super. 2019) (citation omitted). "In addition, our Supreme Court has categorically rejected incorporation by reference as a means of presenting an issue [in the argument portion of an appellant's brief"]. ***See Commonwealth v. Briggs***, 12 A.3d 291, 342–43 (Pa. 2011) (citations omitted) (stating that, where an appellant incorporates prior arguments by reference in contravention of Pa.R.A.P. 2119(a) and (b), he or she waives such claims on appeal)." ***see also Pines v. Farrell***, 848 A.2d 94, 97 n. 3 (Pa. 2004) (holding that reliance on briefs and pleadings already filed in a case was not a recommended form of advocacy and further noting that "this Court is not obliged to root through the record and determine what arguments, if any, respondent forwarded below, nor are we obliged to fashion an argument on his behalf. This is not a recommended form of advocacy").

Herein, Appellant's concise statement raises general challenges to the weight and sufficiency of the evidence along with a challenge to the discretionary aspects of his sentence. In support of these claims, Appellant attaches an exhibit to his concise statement and incorporates by reference numerous prior filings. In doing so, Appellant arguably failed to provide the trial court with a concise statement that is specific enough for the trial court

In his initial claim, Appellant challenges the weight of the evidence to sustain his convictions of Intimidation of a Witness, Terroristic Threats and Stalking.[4]

> A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion.

**Commonwealth v. Widmer**, 744 A.2d 745, 751–52 (Pa. 2000) (citations and footnote omitted).

In addition, an appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

> Appellate review of a weight claim *is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.* Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or

_____

to identify and consider the issues he intends to raise on appeal. However, because this has not fatally impaired the trial court's legal analysis, in that Appellant has directed the court to filings in the record which specify the arguments he develops on appeal, we will not deem his issues to be waived.

[4] Although this issue appears first in the Statement of the Questions Presented, Appellant develops it in the part "B" portion of his appellate brief.

denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (quoting **Widmer**, **supra** at 753 (emphasis in original)) (citation omitted).

Prior to considering the merits of this claim, we first must determine whether Appellant properly has preserved it for our review. The entirety of Appellant's argument in support of this claim reads as follows:

> The standard for review of weight of the evidence is found in Commonwealth v. Smith, 853 A.2d 1020, 1028 (Pa. Super., 2004).
>
> "Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or give them equal weight with all the other facts is to deny justice." Id 1028.
>
> "Furthermore, in reviewing a weight of the evidence claim we look to see if the verdict was so contrary to the evidence as to shock one's sense of justice and make the award of a new trial imperative." [Commonwealth v. Strutt, 624 A.2d 162, 164 (Pa. Super., 1993)].
>
> [Appellant] incorporates his summary of the trial testimony with reference to the trial record in the Statement of the Case section of this Brief by reference into this argument. Further, [Appellant] also incorporates the argument made as to sufficiency of evidence in the previous argument into this weight of evidence argument where he quoted the elements of the crimes and summarized the evidence.
>
> The bottom line is there is no evidence that would suggest or support these convictions. As a result, these convictions should shock one's conscience. This is a conviction where the evidence does not support the conviction.
>
> As noted above, there is nothing that places [Appellant] in the area where this occurred. No one saw him write the

threatening statements. No one saw him present in the area. No contraband or anything was found in his possession that would suggest he wrote these threatening statements. [Appellant] does not live in that particular area. A.L., the alleged victim in the sexual case, did not use the bus stop or subway. A.Y. apparently picked up Bus 25 in that vicinity, but there was no indication that [Appellant] would have known that. More importantly, no one saw him write the statements and there was no handwriting expert to link the block letters to him. A good artist could easily take the block letters that [Appellant] used in his earlier note to A.L. years ago, and recreated the alleged threatening notice. This is not the same as handwriting analysis or looking at handwriting. This was not handwriting, but block letters. This could easily be copied by a good artist. In other words, this was highly speculative testimony to link [Appellant] to these notes. Further, there was pure speculation that the name Squill referred to A.Y., the alleged victim in these charges. That conclusion would be a pure guess.

Further, the verdicts violated (as noted above) fundamental due process due to the conjecture and speculation.

In conclusion, [Appellant] respectfully requests this Honorable Court reverse his convictions under the weight of evidence argument since the verdict was against the weight of the evidence, and this verdict should shock the conscience of the fact-finder.

Brief for Appellant at 62-64.

In an Opinion Announcing the Judgment of the Court, the Pennsylvania Supreme Court refused to consider claims not argued in an appellant's brief but rather incorporated by reference from motions he had made at trial. In doing so, the Court observed that "[t]o permit appellant to incorporate by reference his previous motions would effectively allow him to more than double the original briefing limit."). ***Commonwealth v. (James) Lambert***, 797 A.2d 232, 237 n. 4 (Pa. 2001). As our Supreme Court later observed:

The briefing requirements scrupulously delineated in our appellate rules are not mere trifling matters of stylistic preference; rather, they represent a studied determination by our Court and

- 9 -

its rules committee of the most efficacious manner by which appellate review may be conducted so that a litigant's right to judicial review as guaranteed by Article V, Section 9 of our Commonwealth's Constitution may be properly exercised. Thus, we reiterate that compliance with these rules by appellate advocates who have any business before our Court is mandatory. Consequently, since Appellant has failed to develop or present a proper argument with respect to these constitutional claims, we find them waived in this direct appeal.

*Commonwealth v. Briggs*, 12 A.3d 291, 343 (Pa. 2011).

The same logic applies herein, where, aside from bald allegations which do not pertain to any specific crime of which Appellant was convicted, Appellant attempts to support his challenge to the weight of the evidence by incorporating the arguments he had set forth in the portion of his brief pertaining to sufficiency of the evidence.

Moreover, in relying upon his argument in support of his sufficiency challenge, Appellant conflates weight and sufficiency claims and has essentially failed to develop a challenge to the weight of the evidence. "It is Appellant's obligation to sufficiently develop arguments in his brief by applying the relevant law to the facts of the case, persuade this Court that there were errors below, and convince us relief is due because of those errors. If an appellant does not do so, we may find the argument waived." *Commonwealth v. Gibbs*, 981 A.2d 274, 284 (Pa.Super. 2009). For all of the foregoing reasons, this issue is waived.

Next, Appellant maintains the evidence was insufficient to sustain his convictions. Specifically, Appellant argues his convictions of Intimidation of a

Witness and Terroristic Threats relied heavily upon handwriting attributed to him without proper authentication by an expert witness. He asserts the same argument applies to his Stalking conviction and posits that the conviction cannot stand as Appellant neither spoke to nor touched anyone on October 9, 2015. Brief for Appellant at 48-50; 53-58.

Evidence is sufficient to sustain a conviction when, viewed in the light most favorable to the Commonwealth as verdict winner, the evidence and all reasonable inferences drawn therefrom support the jury's finding of all the elements of an offense beyond a reasonable doubt. **Commonwealth v. Mattison**, 82 A.3d 386, 392 (Pa. 2013) (*citing* **Commonwealth v. Montalvo**, 956 A.2d 926, 932 (Pa. 2008)). In applying this standard, Pennsylvania courts acknowledge that "the Commonwealth may sustain its burden by means of wholly circumstantial evidence." **Montalvo**, 956 A.2d at 932 (*citing* **Commonwealth v. Diggs**, 949 A.2d 873, 877 (Pa. 2008)). The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence, as any doubts regarding a defendant's guilt may be resolved by the fact finder unless the evidence is so inconclusive that, as a matter of law, no probability of guilt may be drawn. **Commonwealth v. Devine**, 26 A.3d 1139, 1145 (Pa.Super. 2011) (*quoting* **Commonwealth v. Jones**, 874 A.2d 108, 120–121 (Pa.Super. 2005)). The fact finder is free to believe all, part, or none of the evidence. **Id.**

In finding Appellant was not entitled to relief on this issue, the trial court cited the relevant law and reasoned as follows:

> The admission of evidence is a matter committed to the sound discretion of the trial court, and the decision to admit certain evidence will not be overturned absent an abuse of that discretion. **Commonwealth v. Collins**, 957 A.2d 237 (Pa. 2008); **Commonwealth v. Zook**, 532 Pa. 79, 615 A.2d 1 (Pa. 1992) The Pennsylvania Rules of Evidence (Pa.R.E.) at Rule 901(a) provides that "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Rule 901(b)(10) provides evidence may be authenticated by "Any method of authentication or identification provided by statute or by other rules prescribed by the Supreme Court." It is clear from the official comments and **Collins**, 957 A.2d at 265, the adoption of this rule incorporated prior Pennsylvania decisional law.
>
> Furthermore; "A document may be authenticated by circumstantial evidence." **Commonwealth v. Brooks**, 532 Pa. Super. 394, 398, 508 A.2d 316, 318 (Pa. Super. 1986) Pennsylvania jurisprudence has long held that "Comparisons of handwriting may by made by a jury. Expert testimony to authenticity is not necessary and the jury may, by comparison of writings, decide whether the authenticated writing was made by the same person as the writing in dispute. (Citation omitted) **Commonwealth v. Gipe**, 169 Pa. Super. 623, 626, 84 A.2d 366, 368 (Pa. Super., 1951)
>
> [Appellant] essentially argues that the Commonwealth failed to establish that he was the author of the "Graffiti" found at [A.L.'s] bus stop; no one saw him do it and the Commonwealth failed to present an expert at trial to authenticate the writing. (N.T., 12/14/17, pg. 11, 12, 14) There was no need for the Commonwealth to call an expert to authenticate [Appellant's] handwriting. At trial, [A.Y.] testified that her bus stop was known to [Appellant], as he had seen her there before and that he had friends who lived in the area. This was supported by [A.L.'s] producing a note from [Appellant] in his hand writing. Comparing the hand writing on the note with the writing in the "Graffiti," she unequivocally identified the writing as that of [Appellant]. The [c]ourt found the testimony of both [A.Y.] and [A.L.], regarding the "Graffiti," compelling. Considering the circumstances of the content, timing and placement of the "Graffiti" led the [c]ourt to

- 12 -

conclude: "There is no question in my mind that the design was done by him." (N.T., 12/14/17, pg. 15)

Intimidation of a witness, is defined at 18 Pa.C.S.A. 4952 which provides in part; "(a) A person commits an offense if, with the intent to or with the knowledge that his conduct will obstruct, impede, impair, prevent or interfere with the administration of criminal justice, he intimidates or attempts to intimidate any witness or victim to:...(3) Withhold any testimony,... relating to the commission of a crime from any law enforcement officer, prosecuting official or judge." "[A]ctual intimidation of a witness is not an essential element of the crime. The crime is committed if one, with the necessary mens rea, "attempts " to intimidate a witness or victim....The trier of the facts, therefore, could find that appellant attempted to intimidate his accuser and that he did so intending or, at least, having knowledge that his conduct was likely to, impede, impair or interfere with the administration of criminal justice.... The Commonwealth is not required to prove mens rea by direct evidence. Frequently such evidence is not available. In such cases, the Commonwealth may rely on circumstantial evidence." ***Commonwealth v. Beasley***, 138 A.3d 39, 48 (Pa. Super. 2016)

Terroristic threats, is defined at 18 Pa.C.S.A. 6301 which provides in part; "(a) ...A person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to: (1) commit any crime of violence with intent to terrorize another...(e)...As used in this section, the term "communicates" means, conveys in person or by written or electronic means, including telephone, electronic mail, Internet, facsimile, telex and similar transmissions." To establish the elements of this crime, the "Commonwealth must prove that 1) the defendant made a threat to commit a crime of violence, and 2) the threat was communicated with the intent to terrorize another or with reckless disregard for the risk of causing terror. Neither the ability to carry out the threat, nor a belief by the person threatened that the threat will be carried out, is an element of the offense. Rather, the harm sought to be prevented by the statute is the psychological distress that follows from an invasion of another's sense of personal security." ***Commonwealth v. Reynolds***, 835 A.2d 720,730 (Pa. Super. Ct. 2003) (Internal citations and quotations omitted) Furthermore, the statute "is not meant to penalize mere spur-of-the-moment threats which result from anger." ***Id***. "However, "being angry does not render a person incapable of forming the intent to terrorize." ***Id***. The Court "must consider the

- 13 -

totality of circumstances to determine whether the threat was a result of a heated verbal exchange or confrontation." ***Id***.

Stalking, is defined at 18 Pa.C.S.A. 2709.1 which provides in part; "a)...A person commits the crime of stalking when the person either:...(2) engages in a course of conduct or repeatedly communicates to another person under circumstances which demonstrate or communicate either an intent to place such other person in reasonable fear of bodily injury or to cause substantial emotional distress to such other person." Communicates is defined as conveying "a message without intent of legitimate communication or address by oral, nonverbal, written or electronic means, including telephone, electronic mail, Internet, facsimile, telex, wireless communication or similar transmission." 18 Pa.C.S.A. 2709.1(1) Course of conduct is defined as a "pattern of actions composed of more than one act over a period of time, however short, evidencing a continuity of conduct. The term includes lewd, lascivious, threatening or obscene words, language, drawings, caricatures or actions, either in person or anonymously."

In considering the totality of the circumstances, it is clear from the record that the "Graffiti", "[A.L.] is lying about rape," and "Kill Squill" written on the benches and trashcan near [A.Y.'s] bus stop, referenced the pending criminal charges brought against [Appellant] by [A.L.]. Although [A.Y.] did not testify at [Appellant's] preliminary hearing, she had been listed as a witness. (N.T., 5/19/17, pg. 199) The plain meaning of these inscriptions was an attempt to intimidate [A.Y.] to prevent her from testifying against [Appellant], as contemplated by 18 Pa.C.S.A. 4952.

It is also clear from the record that the legend, "Kill Squill," inscribed on a trashcan located at this bus stop, constitutes a terroristic threat to commit a crime of violence as contemplated by 18 Pa.C.S.A. 6301(a). This threat was undoubtedly directed at [A.Y], as this was her regular bus stop and not [A.L.'s].

Lastly, the multiple inscriptions constituted a course of conduct or repeated communications demonstrating an intent to place such other person in reasonable fear of bodily injury or to cause substantial emotional distress to such other person as contemplated by 18 Pa.C.S.A. 2709.1. As noted, [Appellant] succeeded in causing [A.Y.] such severe emotional stress[.]

Trial Court Opinion, filed 10/23/18, at 8-12.

Following our review of the record, the parties' briefs, and the relevant law, we discern no error with the trial court's findings regarding the sufficiency of the evidence and find that the foregoing portion of the trial court's Rule 1925(a) Opinion correctly disposes of this issue. Accordingly, we affirm on that basis.

Finally, Appellant argues the trial court abused its discretion in fashioning his sentence. He claims the sentence was "extremely excessive and harsh," "far beyond the guidelines and the district attorney's recommendation," and not supported with adequate reasons on the record. Brief for Appellant at 64.

"A challenge to the discretionary aspects of sentence must be considered a petition for permission to appeal, as the right to pursue such a claim is not absolute." *Commonwealth v. Lamonda*, 52 A.3d 365, 371 (Pa. Super. 2012) (*en banc*) (citation omitted). Thus, before we may consider the merits of Appellant's third issue, he "must invoke this Court's jurisdiction by satisfying a four-part test." *Commonwealth v. Moury*, 992 A.2d 162 (Pa. Super. 2010). The test is:

> (1) whether Appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether Appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Commonwealth v. Evans*, 901 A.2d 528, 533 (Pa.Super. 2006), *appeal denied*, 909 A.2d 303 (Pa. 2006) (internal citations omitted). "Only if the appeal satisfies these requirements may we proceed to decide the substantive merits of Appellant's claim." *Commonwealth v. Luketic*, 162 A.3d 1149, 1159-60 (Pa.Super. 2017).

Herein, Appellant timely filed an appeal with this Court, and he challenged his modified sentence orally on the record at his December 14, 2017, hearing. *See* N.T. 12/14/17, at 32.[5] Appellant also has included a Pa.R.A.P. 2119(f) Statement in his brief. He therefore satisfied the first three prongs of the test.

We now turn to the fourth prong – *i.e.*, whether his Concise Statements of the Reasons Relied Upon for Allowance of Appeal Pursuant to Pennsylvania Rules of Appellate Procedure, 2119(f) raises a substantial question. *See* Brief for Appellant at 46-47. The existence of a substantial question must be

---

[5] In his Amended Notice of Appeal, Appellant indicates he is appealing from his judgment of sentence dated September 21, 2017, the denial of post-trial motions dated December 14, 2017, and the denial of the motion to modify and reconsider sentence which occurred on December 14, 2017; however, in its Order entered on December 14, 2017, which Appellant attached to his notice of appeal as Exhibit "A," the trial court, in fact, granted Appellant's Motion for Reconsideration. In its "Order of Sentence Modified Sentence," also entered on that date, the trial court resentenced Appellant to an aggregate term of six and one-half (6 ½) years to thirteen (13) years in prison to be followed by five (5) years of probation. As such, his appeal properly lies from the judgment of sentence imposed on December 14, 2017.

determined on a case-by-case basis. *See Commonwealth v. Cruz-Centeno*, 668 A.2d 536, 545 (Pa.Super. 1995). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. Glass*, 50 A.3d 720, 727 (Pa.Super. 2012) (citations and internal quotation marks omitted).

In his Pa.R.A.P. 2119(f) Statement, Appellant states his sentence was "extremely harsh under the circumstances and an abuse of discretion" in that it was "far above the Sentencing Guidelines range and even above the aggravated guideline range." Appellant's Brief at 46. Appellant also asserts his sentence exceeded that recommended by the Commonwealth and that the trial court did not provide adequate reasons for imposing it on the record, nor did it consider Appellant's rehabilitative needs in imposing the same. *Id*. at 46-47.

We conclude that Appellant has presented a substantial question, and we will address the merits of the issue. *See Commonwealth v. Caldwell*, 117 A.3d 763, 769-70 (Pa.Super. 2015) (*en banc*) (excessive sentence claim in conjunction with an assertion that the court failed to consider mitigating factors raises a substantial question); *see also Commonwealth v. Hicks*, 151 A.3d 216, 227 (Pa.Super. 2016) (claim that sentencing court failed to set forth adequate reasons for the sentence imposed raises a substantial

question).    On the merits, however, applying our deferential standard of review, we find no abuse of discretion.

Our standard of review concerning challenges to the discretionary aspects of one's sentence provides that:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

***Commonwealth v. Hyland***, 875 A.2d 1175, 1184 (Pa.Super. 2005) (citation omitted), *appeal denied*, 586 Pa. 723, 890 A.2d 1057 (2005).

In this case, prior to imposing its sentence on September 21, 2017, the trial court noted for the record that it had reviewed Appellant's presentence investigation report (PSI) and also had heard the complaining witnesses' victim impact statements along with the arguments of counsel.  It then stated its reasons for imposing it sentence on the record:

> "But to summarize, this is an extremely serious offense. You have a teenager whose life is threatened. And even if she doesn't come to any physical harm, the harm of the crime is the emotional and psychological effects of having your life threatened. And in this case, the threats are coming from someone who they are credible threats. Defense Counsel has described it as a misguided childhood. Whatever the description, he was arrested in the past with a gun charge, and the impact on the victim in this case, it's more serious in part because of her age, her age and the relationship between [Appellant] and the victim. So it's not even the run-of-mill intimidation-of-a -witness case. It's more serious than that. And when we look at his prior record score, the prior record score is not an adequate reflection of his criminal history,

because of the two cases today that he's also pleading guilty to. It's not factored into his record score, but it's a factor to be considered at sentencing. Behavior like [Appellant's] has to be discouraged.

The court system depends on witnesses coming in to court. Every day we hear about witnesses who don't show up. A lot of times there's a relationship between the defendant and the witness. The witness isn't showing up voluntarily because they don't want to pursue the case. Every once in a while we know that some witnesses don't show up because they're afraid. And people have to be deterred from trying to win their cases by threatening witnesses. So deterrence is a factor in [Appellant's] sentence as well. (N.T., 9/21/17 pgs. 58, 59)

Following Appellant's filing of his post-sentence motion and upon hearing defense counsel's arguments, the trial court reconsidered and amended Appellant's sentence on December 14, 2017. In doing so, it reiterated its decision to impose a prison sentence on only the most serious charge (Intimidation of a Witness) with concurrent probationary sentences on the remaining charges. The trial court also reminded defense counsel that within the Sentencing Guidelines, it could have sentenced Appellant to five and one half (5 ½) years on the Witness Intimidation conviction along with a consecutive sentence of up to five (5) more years each for the Terroristic Threats and Stalking convictions. The court stressed that the Sentencing Guidelines are "inadequate when they set a range of sentencing for the [Intimidation of a Witness] offense because of the lack of nuance" in recognizing a "death threat is different from other kinds of crimes" because it "continues for so long as she thinks she is liable to be killed." N.T. 12/14/17, at 21-22, 24.

Notwithstanding, the trial court ultimately reduced Appellant's prison sentence by six months and in doing so stated on the record:

> "I like the argument that when you add up the guideline sentences they don't quite make it to 7 to 15. So I am going to modify the sentence. I am going to modify the sentence on the charge of intimidation of a witness. That was Count 1 on that transcript, 751-2016. The sentence I imposed was 7 to 15. I am going to modify that, make it 6 ½ to 13. The other aspects of the sentence will all remain the same. So his aggregate sentence is 6 1/2 to 13 plus 5 years' probation on that count. Five years' probation on each of the other counts running concurrent with each other and concurrent with the probation on Count 1 makes his aggregate sentence 6 ½ to 13 followed by 5 years' probation." (N.T., 12/14/17 pg. 25)

Trial Court Opinion, filed 10/23/18, at 17.

We find that, Appellant's assertions to the contrary, the trial court reviewed Appellant's PSI and set forth proper reasons for sentencing him. Furthermore, the court acted within the Sentencing Guidelines and, as it noted, could have imposed additional, consecutive prison terms on the Terroristic Threats and Stalking convictions while still staying within the Guidelines. Indeed, Appellant "is not entitled to a volume discount for his crimes." *Commonwealth v. Swope*, 123 A.3d 333, 341 (Pa.Super. 2015). Considering that Appellant's actions amounted to a six month campaign of terror against a sixteen-year-old girl, we do not find the trial court abused its discretion when crafting its December 14, 2017, sentence.

As to Appellant's complaints that the trial court failed to consider, or inadequately weighed, mitigating circumstances such as his lack of a significant prior record, these matters were included in his PSI. "When, as

here, the trial court has the benefit of a pre-sentence report, we presume that the court was aware of relevant information regarding the defendant's character and weighed those considerations along with any mitigating factors." ***Commonwealth v. Seagraves***, 103 A.3d 839, 842 (Pa. Super. 2014). With regard to Appellant's assertion that the court erred in imposing a sentence which exceeded the one recommended by the Commonwealth, the Commonwealth's recommendations, or lack thereof, are not binding on the trial court's exercise of discretion at sentencing. Thus, this claim is frivolous.

Given our deferential standard of review when considering a challenge to the discretionary aspects of sentencing, it would be inappropriate for us to second-guess the trial court's weighing of the aforementioned factors, for we cannot substitute our view of aggravating and mitigating factors with those of the trial court, nor may we reweigh those mitigating factors which Appellant thinks the sentencing judge overlooked. ***See Commonwealth v. Marts***, 889 A.2d 608, 612 (Pa.Super. 2005). Accordingly, Appellant has not persuaded us that an abuse of discretion occurred. We dismiss his final appellate issue as meritless.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>10/28/19</u>