J-S23008-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ROBERT F. WOOLFORD | : | |
| | : | |
| Appellant | : | No. 2053 EDA 2022 |

Appeal from the Judgment of Sentence Entered July 11, 2022
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0002915-2021

BEFORE:  PANELLA, P.J., KUNSELMAN, J., and KING, J.

MEMORANDUM BY PANELLA, P.J.:          **FILED SEPTEMBER 18, 2023**

Robert F. Woolford appeals from the judgment of sentence entered by the Philadelphia County Court of Common Pleas on July 11, 2022. On appeal, Woolford challenges the sufficiency and weight of the evidence supporting his convictions. After careful review, we affirm.

The trial court accurately summarized the factual history as follows:

On March 22, 2021 at approximately 11:00 pm, [Woolford] went to Nevelyn Davis's home at 2047 Granite Street in Philadelphia, Pennsylvania. She was his former girlfriend and was not home at the time. Complainant, Kaseem Davis (Nevelyn Davis' son) answered the door and met [Woolford], who asked Complainant if he could retrieve something from inside the home.

While inside the home, [Woolford] proceeded to give "life advice" to the Complainant while following him upstairs. [Woolford] apparently was downstairs in the living room at some point during this exchange, while Complainant was at the top of the stairwell on the second floor. Despite that, Complainant said he could see [Woolford] down at the bottom of the stairs in the living room. When [Woolford] failed to get the Complainant's attention,

[Woolford] became aggressive, telling Complaint "when I'm talking to you, pay attention." The Complainant subsequently received a phone call on his cell phone from Nevelyn Davis, after which Complainant told [Woolford] to promptly leave the home. [Woolford] explicitly refused to leave the premises and continued to argue with the Complainant.

After arguing with Complainant, [Woolford] removed a firearm from [] his waistband and then tucked it back in, saying, "you don't know who I am. You ain't gonna do nothing". [Woolford] ultimately left the residence and walked into the street. He repeated that phrase, then took out the firearm from his waistband a second time while standing in the middle of the street in front of Complainant's home.

The Complainant saw [Woolford] brandishing the firearm while standing in the street and shut the front door. Complainant continued to speak with his mother on his cell phone. [Woolford] ultimately left the area and did not return that evening.

The police were subsequently notified.

Philadelphia Police Detective Thomas Bartol obtained a search warrant for [Woolford]'s home at 1625 E. Lycoming Street and also conducted a record search to see if [Woolford] was licensed to carry a weapon. Detective Bartol determined from the record check that [Woolford] was not licensed to possess a firearm; In addition, pursuant to the search of [Woolford]'s home, Detective Bartol recovered a firearm and thirty-four (34) rounds of nine (9)-millimeter ammunition. The recovered firearm was a nine (9)-millimeter SCCY handgun, model number CPX-1, serial number 715445.

Trial Court Opinion, 12/5/2022, at 3-4 (citations to record omitted).

On May 10, 2022, following a bench trial, the trial court found Woolford guilty of firearms not to be carried without a license, carrying firearms in public in Philadelphia, possession of an instrument of crime with intent to commit a crime, and terroristic threats with intent to terrorize another. The court found Woolford not guilty of recklessly endangering another person. Sentencing was

deferred for preparation of a presentence investigation and a mental health report. On July 11, 2022, the trial court sentenced Woolford to three years' probation. This timely appeal followed.

Woolford raises the following two issues on appeal:

a) Was the evidence insufficient to sustain [Woolford]'s conviction for terroristic threats w/intent to terrorize another in that the evidence failed to establish beyond a reasonable doubt that [Woolford] communicated, either directly or indirectly, a threat to commit any crime of violence with intent to terrorize another?

b) Did the trial court err as a matter of law in not properly weighing [Woolford]'s testimony and character evidence in that the court focused primarily on the time that [Woolford] arrived at the complainant's home and admonished him repeatedly that he should not have been there: wherein the timing of this incident appears to outweigh all other credible testimony put forth during the hearing?

Appellant's Brief, at 4.

Our standard of review for a challenge to the sufficiency of the evidence is to determine whether, when viewed in a light most favorable to the verdict winner, the evidence at trial and all reasonable inferences therefrom are sufficient for the trier of fact to find that each element of the crimes charged is established beyond a reasonable doubt. *See Commonwealth v. Dale*, 836 A.2d 150, 152 (Pa. Super. 2003). The Commonwealth may meet this burden of proving every element of the crime by utilizing only circumstantial evidence. *See Commonwealth v. Bruce*, 916 A.2d 657, 661 (Pa. Super. 2007).

"[T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." *Id*. (citation omitted). Any doubt

raised as to the accused's guilt is to be resolved by the fact-finder, so long as the evidence presented is not utterly incapable of supporting the necessary inferences. **See id**. This Court does not independently assess credibility or otherwise assign weight to evidence on appeal. **See Commonwealth v. Kinney**, 863 A.2d 581, 584 (Pa. Super. 2004).

Woolford challenges the sufficiency of the evidence supporting his terroristic threats conviction. Specifically, Woolford claims the Commonwealth failed to establish that he threatened to commit a crime of violence or that he intended to terrorize the Complainant. **See** Appellant's Brief, at 10. Alternatively, Woolford argues that if a threat was established, the threat occurred during a heated exchange and therefore constituted "a spur-of-the-moment threat made during a period of transitory anger." **Id.** at 12.

"A person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to … commit any crime of violence with intent to terrorize another[.]" 18 Pa.C.S.A. § 2706(a)(1). As this Court has stated, for a defendant to be convicted of terroristic threats "the Commonwealth must prove that 1) the defendant made a threat to commit a crime of violence, and 2) the threat was communicated with the intent to terrorize another or with reckless disregard for the risk of causing terror." **Commonwealth v. Beasley**, 138 A.3d 39, 46 (Pa. Super. 2016) (citation omitted).

Section 2706 is not meant to encompass "mere spur-of-the-moment threats which result from anger." 18 Pa.C.S.A. § 2706, Comment. However, anger "does not render a person incapable of forming the intent to terrorize." **Commonwealth v. Walker**, 836 A.2d 999, 1001 (Pa. Super. 2003) (citation omitted). In determining whether a threat was a spur-of-the-moment statement made during a heated verbal exchange, we consider the totality of the circumstances. **See Commonwealth v. Sexton**, 222 A.3d 405, 418 (Pa. Super. 2019). Further, in **Commonwealth v. Tizer**, 684 A.2d 597, 601 (Pa. Super. 1996), this Court concluded that a lack of evidence that the victim was acting violently was sufficient to negate the defendant's claim that his threats were caused by heated argument.

We have long held that a defendant's intent to terrorize can be inferred from his actions and from the message he communicated. **See Commonwealth v. Kelley**, 664 A.2d 123, 128 (Pa. Super. 1995). Moreover, as our Court has explained,

> [n]either the ability to carry out the threat, nor a belief by the person threatened that the threat will be carried out, is an element of the offense. Rather, the harm sought to be prevented by the statute is the psychological distress that follows from an invasion of another's sense of personal security.

**Beasley**, 138 A.3d at 46 (citations and internal quotation marks omitted). Also, the Commonwealth is not required to produce evidence that the person to whom the defendant communicated the threat was actually frightened. **See id**.

Viewing the facts and circumstances of this case in the light most favorable to the Commonwealth as the verdict winner, Woolford's terroristic threats conviction is supported by the record. Our review of the record reflects the trial judge had sufficient evidence to conclude that Woolford possessed the necessary intent to commit the crime. Despite Woolford's characterization of his actions as spur-of-the-moment threats, the testimony indicates this was not a fleeting argument. Rather, Woolford went to the complainant's house on his own accord, and chose to bring an unlicensed gun with him. Further, the complainant testified that Woolford brandished the gun not once, but twice. Accordingly, even if the initial flash of the gun occurred during a heated exchange, this would not explain why Woolford displayed the gun a second time while outside of the complainant's home. Finally, there was no evidence presented that the complainant was acting violently toward Woolford. **See Tizer**, 684 A.2d at 601 (concluding that lack of evidence that victim was acting violently was sufficient to negate defendant's claim his threats were caused by heated argument). Rather, the trial court credited the complainant's testimony that he asked Woolford to leave and that Woolford refused to leave. Accordingly, this claim merits no relief.

In his second and final issue, Woolford challenges the weight of the evidence supporting his convictions. We are constrained to conclude this issue is waived, as a review of the record reveals Woolford did not properly preserve a weight challenge before the trial court.

Pennsylvania Rule of Criminal Procedure 607(A) requires a challenge to the weight of the evidence to be raised with the trial court in a motion for a new trial that is presented "(1) orally, on the record, at any time before sentencing; (2) by written motion at any time before sentencing; or (3) in a post-sentence motion." Pa.R.Crim.P. 607(A). "Failure to properly preserve the claim will result in waiver, even if the trial court addresses the issue in its opinion." **Commonwealth v. Lofton**, 57 A.3d 1270, 1273 (Pa. Super. 2012) (citation omitted).

Woolford did not file any post-sentence motions, let alone one raising a weight challenge. Further, Woolford did not raise a weight challenge before sentencing. Accordingly, the weight of the evidence was not properly preserved. Therefore, we conclude the weight of the evidence claim is waived. **See** Pa.R.Crim.P. 607(A); **Lofton**, 57 A.3d at 1273.

Even if Woolford had preserved a weight challenge, we would nevertheless find the issue without merit.

We may only reverse the lower court's verdict if the court abuses its discretion in assessing whether the verdict was so contrary to the evidence as to shock the court's sense of justice. **See Commonwealth v. Champney**, 832 A.2d 403, 408 (Pa. 2003) (citations omitted). A verdict is said to be contrary to the evidence such that it shocks one's sense of justice when "the figure of Justice totters on her pedestal," or when "the jury's verdict, at the time of its rendition, causes the trial judge to lose his breath, temporarily, and

causes him to almost fall from the bench, then it is truly shocking to the judicial conscience." ***Commonwealth v. Davidson***, 860 A.2d 575, 581 (Pa. Super. 2004) (citations omitted).

In advancing his weight challenge, Woolford claims the complainant's testimony was "conflicting and incredible". Appellant's Brief, at 15. Further, Woolford argues the trial court failed to consider any character evidence and therefore did not afford it any weight. Woolford therefore contends the verdict was against the weight of the evidence.

In its opinion, the trial court makes it clear that its decision was a credibility determination and that it believed the complainant's testimony, while finding Woolford's testimony "largely incredible". Trial Court Opinion, 12/5/2022, at 9. We cannot conclude that the trial court's reasoning constitutes an abuse of its discretion. No witness is ever perfectly credible. The circumstances highlighted by Woolford are circumstances that fact-finders evaluate in every trial and cannot be said to be so concerning that no rational fact-finder could believe the victim's testimony.

As we find Woolford's claims are either waived or without merit, we affirm the judgment of sentence.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>9/18/2023</u>