J-S34038-24

2024 PA Super 269

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
TOMMIE HOLMES :
:
Appellant : No. 489 WDA 2024

Appeal from the Judgment of Sentence Entered October 12, 2022
In the Court of Common Pleas of Washington County Criminal Division at
No(s): CP-63-CR-0001921-2020

BEFORE: DUBOW, J., LANE, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.: **FILED: November 13, 2024**

Appellant, Tommie Holmes, appeals from the judgment of sentence entered in the Court of Common Pleas of Washington County after a jury found him guilty of numerous drug offenses, enumerated *infra*. Sentenced to an aggregate sentence of not less than 10 years nor more than 20 years' imprisonment, Appellant raises challenges to the sufficiency of the evidence, to an evidentiary ruling, and to the Commonwealth's use of a peremptory strike on an African American juror. After careful consideration, we affirm.

The trial court opinion sets forth the pertinent procedural history of the case, as follows:

> On September 23, 2020, Detectives Jason Fichter and Ryan McWreath of the Washington County Drug Task Force filed a criminal complaint against Appellant, through which Appellant was charged with the [firearm offenses and drug offenses, *see infra*].

---

[*] Former Justice specially assigned to the Superior Court.

Appellant was arrested that same day and was unable to post bail. Thereafter, Appellant's preliminary hearing was held on October 26, 2020, before Magisterial District Juge Robert Redlinger and all charges were held for court.

On November 13, 2020, the Commonwealth filed a Bill of Information against Appellant which contained the following charges: Count 1, Possession of a Firearm Prohibited, 18 Pa.C.S. § 6105(a)(1), a Felony of the Second Degree; Count 2, Possession with Intent to Deliver a Controlled Substance, Marijuana, 35 P.S. § 780-113(a)(30), an ungraded Felony; Count 3, Criminal Conspiracy – Possession with Intent to Deliver a Controlled Substance, Marijuana, 18 Pa.C.S. § 903(a)(1)/35 P.S. § 780-113(a)(30), an ungraded Felony; Count 4, Possession with Intent to Deliver a Controlled Substance, Cocaine, 35 P.S. §780-113(a)(30), an ungraded Felony; Count 5, Criminal Conspiracy – Possession with Intent to Deliver a Controlled Substance, Cocaine, 18 Pa.C.S. § 903(a)(1)/35 P.S. § 780-113(a)(30), an ungraded Felony; Count 6, Possession of a Controlled Substance, Marijuana, 35 P.S. § 780-113(a)(16), an ungraded Misdemeanor; Count 7, Possession of a Controlled Substance, Cocaine, 35 P.S. § 780-113(a)(16), an ungraded Misdemeanor; and Count 8, Possession of Drug Paraphernalia, Plastic Baggies and/or Digital Scales, 35 P.S. § 780-113(a)(32), an ungraded Misdemeanor.

. . . .

Appellant's jury trial commenced on July 12, 2022, and lasted two days. [Appellant was represented by counsel throughout.] On July 14, 2022, at the conclusion of trial, the jury found Appellant guilty at [Counts 2, 3, 4, 5, 6, 7, and 8]. Appellant was found not guilty at Count 1, Possession of a Firearm Prohibited. The [trial court] deferred sentencing to October 12, 2022, [to afford time for the completion of a presentence investigation report].

On October 12, 2022, the [trial court imposed an aggregate sentence of no less than 10 years to no more than 20 years' incarceration], to be followed by 12 months of reentry supervision. Appellant was given time served as calculated by the Department of Corrections.

On October 24, 2022, Appellant filed a post-sentence motion, through which Appellant raised a Motion for Judgment of Acquittal, a Motion for a New Trial, and a Motion to Modify Sentence. A

hearing on Appellant's post-sentence motion was held on November 28, 2022. Following the hearing, [the trial court], in an order dated February 17, 2023, denied Appellant's post-sentence motion in its entirety.

[Appellant filed a timely counseled appeal. Counsel failed to file both a court-ordered Pa.R.A.P. 1925(b) concise statement and an appellate brief, with the latter omission prompting this Court to dismiss Appellant's initial appeal. Subsequently, Appellant filed a *pro se* motion with the trial court seeking removal of counsel and reinstatement of direct appeal rights, which the trial court/PCRA court granted *nunc pro tunc*.]

Thereafter, [present counsel] entered his appearance on behalf of Appellant and filed the instant appeal on April 22, 2024. [The trial court] directed Appellant to file and serve upon [it] a Concise Statement of Matters Complained of on Appeal in accordance with Pa.R.A.P. 1925(b). Appellant filed his Concise Statement on May 14, 2024.

[Appellant's counseled Rule 1925(b) statement raised the following enumerated issues:]

1. Was the evidence at trial sufficient to convict [Appellant on possession with intent to deliver, criminal conspiracy, and possession of a controlled substance?

2. Whether the trial court [erred] by admitting contraband found in the residence that the [Appellant] had no legal ties to as the facts [showed]?

3. Whether [Appellant] was granted a fair jury selection and trial when the jury was [comprised] of all Caucasian individuals?

4. Whether criminal conspiracy merges with possession with intent to deliver?

5. Whether the trial court abused its discretion in sentencing [Appellant] to ten (10) to twenty (20) years based on Appellant's prior record score, etc.

Appellant's Concise Statement of Matters Complained of on Appeal, 5/14/2024.

Trial Court Opinion, 6/5/24, at 1-2, 3-4, 5.

The counseled Brief of Appellant presents three questions for this Court's consideration:

1. Was the evidence at trial sufficient to convict [Appellant] on possession with intent to deliver, criminal conspiracy and possession of a controlled substance?

2. Whether the trial court erred by admitting contraband found in the residence that [Appellant] had no legal ties to as the facts were given at trial?

3. Whether [Appellant] was granted a fair jury selection at trial when the jury was comprised of all Caucasian individuals?

Brief of Appellant, at 7.

In Appellant's first issue, he argues that the Commonwealth failed to present evidence sufficient to convict him on PWID, criminal conspiracy, and possession of a controlled substance.

When reviewing a challenge to the sufficiency of the evidence, our standard of review is as follows:

A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim, the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

In applying the above test, we may not [re]weigh the evidence and substitute our judgment for the fact-finder.

*Commonwealth v. James*, 297 A.3d 755, 764 (Pa. Super. 2023) (citations omitted and formatting altered), *appeal denied*, 309 A.3d 691 (Pa. 2023).

Our review of Appellant's argument in support of his sufficiency issue shows it to lack any discussion of the evidence relating to each material element of the crimes charged. Instead, his argument offers only a conclusory assertion disagreeing with the trial court's determination that Appellant's Rule 1925(b) statement on the issue was inadequate. From that unsupported position, Appellant pivots to offering generic, boilerplate law pertaining to the weight of the evidence, an issue that he has not raised and developed in this appeal. *See* Brief of Appellant, 11-13.

Because Appellant has not developed his sufficiency claim in any meaningful way and otherwise conflates the distinct concepts of the sufficiency of the evidence and weight of the evidence,[1] his first issue affords him no relief. *See* Pa.R.A.P. 2119(a) (providing that an appellant's argument shall include "such discussion and citation of authorities as are deemed pertinent."); *Commonwealth v. Paddy*, 14 A.3d 431, 443 (Pa. 2011) (providing that boilerplate allegations and bald assertions cannot satisfy one's

_____

[1] *See Commonwealth v. Widmer*, 744 A.2d 745, 751-52 (Pa. 2000) (sufficiency of evidence claims are distinct from weight of evidence claims; explaining differences between sufficiency and weight challenges). *Commonwealth v. Sexton*, 222 A.3d 405, 416 (Pa. Super. 2019) (appellant waived challenge to weight of the evidence where appellant's brief conflated weight and sufficiency claims and did not otherwise develop weight claim).

briefing requirements). *See also Commonwealth v. Ritchey*, 266 A.3d 615 (non-precedential decision)[2] (Pa. Super. Ct. 2021) (citing *Commonwealth v. Johnson*, 985 A.2d 915, 924 (Pa. 2009) (stating that "where an appellate brief fails to provide any discussion of a claim with citation to relevant authority[,] or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived.")).

In Appellant's second issue, he asks "[w]hether the trial court erred by admitting contraband found in the residence that he had no legal ties to as the facts shown [sic] at trial?" Brief of Appellant, at 14. Like the deficiencies inherent in his first issue, Appellant's second issue fails to develop an argument with citation to and discussion of pertinent decisional law, which substantially impairs our ability to conduct meaningful review of this claim. *See* Brief of Appellant at 14-15. Accordingly, his second issue fails.

Finally, Appellant contends that the trial court denied him a fair trial when it denied his *Batson* challenge during *voir dire* after the Commonwealth used one of its peremptory challenges to remove the only African American individual, Juror 39, in the jury pool. This Court has recently outlined the governing standard of review of a *Batson* challenge:

> The scope of *voir dire* rests in the sound discretion of the trial court, whose decision will not be reversed on

---

[2] *See* Pa.R.A.P. 126(b) (stating we may rely on non-precedential decisions from this Court filed after May 1, 2019, for persuasive value).

appeal absent palpable error. The purpose of *voir dire* is to ensure the empaneling of a competent, fair, impartial, and unprejudiced jury. The scope of *voir dire* should therefore be limited to questions that attempt to disclose a potential juror's lack of qualification or fixed opinion regarding the defendant's guilt or innocence. A prospective juror's personal views are of no moment absent a showing that these opinions are so deeply embedded as to render that person incapable of accepting and applying the law as given by the court.

**Commonwealth v. Scott**, 212 A.3d 1094, 1103 (Pa. Super. 2019) (citation omitted).

"[A] prosecutor's challenge to potential jurors solely on the basis of race violates the Equal Protection Clause of the United States Constitution" pursuant to the Supreme Court of the United States decision in **Batson v. Kentucky**, 476 U.S. 79 (1986). **Id.** at 1105. "A **Batson** claim presents mixed questions of law and fact. Therefore, our standard of review is whether the trial court's legal conclusions are correct and whether its factual findings are clearly erroneous." **Id.** (citation omitted). When a defendant makes a **Batson** challenge during jury selection:

> First, the defendant must make a *prima facie* showing that the circumstances give rise to an inference that the prosecutor struck one or more prospective jurors on account of race; second, if the *prima facie* showing is made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the juror(s) at issue; and third, the trial court must then make the ultimate determination of whether the defense has carried its burden of proving purposeful discrimination.

The trial court should consider the totality of circumstances when determining whether the

- 7 -

prosecutor acted with discriminatory intent or engaged in purposeful discrimination. This Court must give great deference to a trial court's determination that peremptory challenges were free of discriminatory intent, and we will not overturn the determination unless it was clearly erroneous.

*Id.* at 1105–1106 (internal citations and quotations omitted).

Moreover,

[t]he defendant does not satisfy ***Batson***'s first step of *prima facie* evidence merely by showing that the prosecutor used a number of strikes against venirepersons of one race. Nor is it sufficient to merely point out the fact that the prosecutor rejected a higher percentage of African–American potential jurors than non-African-American potential jurors. Instead, the defendant must preserve a full and complete record of the asserted ***Batson*** violation, as it would otherwise be impossible to conduct meaningful appellate review of the motivations of prosecutors in individual cases without such a record.

Within the *prima facie* case wherein a defendant must establish on the record the circumstances demonstrating purposeful discrimination, Pennsylvania law also requires that a defendant must make a record specifically identifying (1) the race or gender of all venirepersons in the jury pools, (2) the race or gender of all venirepersons remaining after challenges for cause, (3) the race or gender of those removed by the prosecutor, and (4) the race or gender of the jurors who served and the race or gender of jurors acceptable to the Commonwealth who were stricken by the defense.

In other words, for a ***Batson*** claim to be in a posture for the trial court to make a proper ruling, the following must happen. First, a defendant must make out a *prima facie* case on the record to the trial court. The *prima facie* case requires more than just noting on the record the race of excluded jurors and the numerical composition of the prosecution's strikes.

> The *prima facie* case must be detailed enough for the trial court eventually to assess whether there has been purposeful discrimination to establish a ***Batson*** violation. The *prima facie* case must identify the circumstances a defendant believes establishes purposeful discrimination, including those record items required under Pennsylvania law. Second, once a defendant qualifies the record with a sufficient *prima facie* case, the prosecution is then obligated to provide race-neutral explanations for the strikes being questioned. Finally, once the record is complete with a defendant's *prima facie* case and the prosecution's race neutral explanations, the trial court has a proper foundation to proceed to the third step, in which it assesses the totality of the circumstances surrounding juror selection and determines whether the defendant has made out a case of purposeful discrimination.

> ***Commonwealth v. Murray***, 248 A.3d 557, 568 (Pa. Super. 2021) (internal quotations and citations omitted).

***Commonwealth v. Miller***, 321 A.3d 938, at \*\*3-4 (non-precedential decision) (Pa. Super. Ct. 2024).

Appellant argues that a *prima facie* case of purposeful discrimination was made because the record establishes that the juror in question was the only African American juror in the jury pool. ***See*** Brief for Appellant, at 17. This argument fails under the governing standard of review expressed above. Even assuming arguendo that Appellant had presented a *prima facie* case, the record reveals the trial court required the Commonwealth to state a race-neutral explanation for striking Juror 39.

The transcript of *voir dire* reveals that questioning of Juror 39 first addressed her ability to serve impartially even though her father is a police officer for a nearby municipal police department not involved with the present

matter. N.T. 7/11/2022, at 202-203. The discussion shifted, however, to whether her impartiality may be affected by the view she expressed in her questionnaire, namely, that she would be less likely to believe the testimony of a police officer or other law enforcement officer because of their employment. N.T. at 202. Specifically, she shared her opinion that law enforcement has acted with what she referred to as "racial prejudice against African Americans." N.T. at 204. This viewpoint, she conceded, can cause her to doubt whether an officer is telling the truth. *Id*. She then qualified her answer by stating, "I don't think that's fair to judge every officer. I don't know if that was, like, a generalized question or if that was just, like, one specific officer. Like, I don't think every – I don't think that applies to every officer, no. But I've seen it before, so, yeah, I guess that would change my judgment. Yes." N.T. at 205.

In response, the Commonwealth asked Juror 39, "Would you be less likely to believe the officers who get on the stand in this case and testify? Would you be less likely to believe their testimony because they are officers than if anyone else got on the stand?" Juror 39 answered, "I mean, yeah. I would say yes. In my opinion, yeah, I think I would . . . ." N.T. at 205. When the Commonwealth repeated the question just for the sake of clarity, Juror 39 again replied, "Then yes. Yes." N.T. at 206

In its Rule 1925(a) opinion, the trial court discerned the above exchange as providing a credible, race-neutral explanation for the Commonwealth's peremptory strike of Juror 39. Trial Court Opinion, at 17-20. We agree.

Accordingly, we conclude there is no basis to support Appellant's appellate claim that purposeful discrimination attended the Commonwealth's decision to use its peremptory strike on Juror 39.

For the foregoing reasons, we affirm.

Affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 11/13/2024