J-S19025-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| HUN OH | : | |
| | : | |
| Appellant | : | No. 2160 EDA 2021 |

Appeal from the PCRA Order Entered September 15, 2021
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0005108-2017

BEFORE:   PANELLA, P.J., OLSON, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY OLSON, J.:                **FILED AUGUST 23, 2022**

Appellant, Hun Oh, appeals from the September 15, 2021 order denying his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546.  We affirm.

This Court previously summarized the factual and procedural history as follows:

> On April 20, 2017, at approximately 3:40 [p.m.,] Appellant's [then] twelve[-]year[-]old son ("D.O.") returned from school to his home located [] in Montgomery County[, Pennsylvania].  After about five to ten minutes, Appellant came downstairs into the living room, visibly angry at the sight of D.O. [using a cellular tele]phone.  Appellant angrily interrogated D.O. for a few brief minutes before D.O., fearing his father may attack him[,] fled the escalating situation[] and ran up the stairs, with Appellant in pursuit[.  D.O.] ultimately [sought] refuge by locking himself in the bathroom.  Appellant unlocked the bathroom door with a key and[,] upon entering, caused D.O. to fall back into the tub.

---

[*] Former Justice specially assigned to the Superior Court.

Appellant then lunged at D.O., choking his neck with both hands. D.O. fought off his father by scratching his arm and then ran to his own bedroom. Appellant followed D.O., cornering him on his bed, where he proceeded to punch D.O. repeatedly in the side of his stomach, before choking him again. D.O. screamed for Appellant to get off of him, and when Appellant let go, D.O. ran downstairs and fled for the home of his neighbor[.] Upon answering the door, [the neighbor] immediately saw D.O. was crying, seemed to be in shock, and had a scratch mark under his right eye. When [the neighbor] asked D.O. what was wrong, he reported that his father [] hit him and asked [the neighbor] to call his mother[ ("Mother").] Immediately after calling [Mother, the neighbor] drove D.O. to [Mother's] place of employment[, which was a medical center]. [Mother] examined her son and discovered a mark on his right eye and noted that his face was swollen from the assault. After [Mother's] shift was over, she and D.O. waited outside for a while before returning home late that night. Upon returning home, Appellant screamed at D.O. and [Mother] that he was going to make them leave the house before [Mother] took D.O. to stay the night in [her] bedroom with her.

The next day at school, on April 21, 2017, D.O. shared details of the assault with two of his friends. Both of his friends and his teacher[,] who overheard the conversation, insisted that D.O. report the incident to the school counselor[.] D.O. then reported to [the counselor's] office and shared a detailed account of the attack by his father. [The counselor] recalled that D.O. was visibly upset and experienced pain and difficulty in discussing the assault. [The counselor] filed a report with [CHILDLINE[1]] immediately following the conversation with D.O. and took D.O. to the school nurse to be examined. [T]he school nurse[] observed a light bruise on D.O.'s lower cheek and noted that D.O. suffered pain when moving his neck, swallowing, and speaking. [The school nurse] immediately called [Mother], advising her that D.O. should be taken to the hospital for a complete examination, which advice [Mother] followed by reporting to [a] hospital that same day [on] April 21, 2017. On April 28, 2017, [Mother] petitioned for[,] and was granted[,] a temporary protection from abuse [("PFA")] order

---

[1] We note that "CHILDLINE is Pennsylvania's electronic portal for reporting suspicions of child abuse and neglect." **See** https://www.montcopa.org/715/Child-Protective-Services (last visited July 6, 2022).

on behalf of D.O.  On April 21,2017, Detective Ricardo DeJesus ("Det[ective] DeJesus") reported to Montgomery County Police Department to interview D.O. and afterwards proceeded to schedule a Mission Kids[2] interview for D.O. on April 28, 2017.

The Commonwealth ultimately charged Appellant with the following [five] counts[:] Count One[: ]Strangulation-[second degree felony,] Count Two[: ]Simple Assault-[second degree misdemeanor,] Count Three[: ]Recklessly Endangering Another Person ("REAP")-[second degree misdemeanor,] Count Four[: ]Endangering the Welfare of a Child-[first degree misdemeanor,] and Count Five[: ]Harassment-[summary offense.[3]]  On August 29, 2018, the case proceeded to a two-day bench trial after which the [trial] court found Appellant guilty on the following [charges]: Count Two[: ]Simple Assault-[second degree misdemeanor] and Count Four[: ]Endangering the Welfare of a Child-[first degree misdemeanor.]

[Appellant] did not file a post-sentence motion.  [Appellant was sentenced to five years' probation and ordered to have no contact with D.O. unless permitted by a custody order.  Appellant was also required to pay the costs of prosecution, attend anger management classes, and take part in parenting classes.]  On March 14, 2019, Appellant filed a timely notice of [direct] appeal challenging the imposition of his sentence.

*Commonwealth v. Oh*, 2019 WL 7168105, at *1-*2 (Pa. Super. Dec. 23, 2019) (unpublished memorandum) (record citations, extraneous capitalization, original brackets, and section headings omitted).

On December 23, 2019, this Court affirmed Appellant's judgment of sentence.  *Id.* at *1.  Appellant did not seek discretionary review by our

_____

[2] We note that Mission Kids is a child advocacy center that "coordinates the investigation of child abuse cases in Montgomery County[.]" *See* https://missionkidscac.org/what-we-do (last visited July 6, 2022).

[3] 18 Pa.C.S.A. §§ 2718(a)(1), 2701(a)(1), 2705, 4304(a)(1), and 2709(a)(1), respectively.

- 3 -

Supreme Court, and his judgment of sentence became final on January 22, 2020. **See** 42 Pa.C.S.A. § 9545(b)(3) (stating, "[a] judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of the time for seeking the review"); **see also** Pa.R.A.P. 1113(a) (requiring a petition for allowance of appeal to be filed within 30 days after entry of an order of this Court sought to be reviewed).

On February 14, 2020, Appellant filed the instant PCRA petition, seeking a new trial based upon claims of ineffective assistance of counsel.[4] Appellant's PCRA Petition, 2/14/20; **see also** 42 Pa.C.S.A. § 9543(a)(2)(ii). On June 24, 2021, the PCRA court ordered the Commonwealth to file an answer to Appellant's petition, which the Commonwealth subsequently filed on July 13, 2021. The PCRA court conducted an evidentiary hearing on September 15, 2021. At the conclusion of the hearing, the PCRA court dismissed Appellant's

_____

[4] Appellant previously filed a PCRA petition on August 29, 2019, during the pendency of his direct appeal. On July 8, 2020, the PCRA court dismissed Appellant's August 2019 petition on the ground that it was premature. **See Commonwealth v. Kubis**, 808 A.2d 196, 198 n.4 (Pa. Super. 2002) (stating that, "[t]he PCRA provides petitioners with a means of collateral review, but has no applicability until the judgment of sentence becomes final" and, as such, a petition filed during the pendency of the direct appeal, and before judgment of sentence becomes final, is premature), *appeal denied*, 813 A.2d 839 (Pa. 2002).

petition.[5]  N.T., 9/15/21, at 110; *see also* PCRA Court Order, 9/16/21.  This appeal followed.[6]

Appellant raises the following issues for our review:

1.    Whether the PCRA court erred in denying Appellant's PCRA petition on the basis of ineffective assistance of counsel for failing to impeach a prosecution witness and failing to call an exculpatory witness?

2.    Whether the trial [court] erred as a matter of law in finding Appellant guilty of simple assault and endangering the welfare of a child despite the lack of physical evidence?

3.    Whether the [Commonwealth] violated [its] duty to disclose exculpatory evidence?

Appellant's Brief at 4 (extraneous capitalization omitted).

Preliminarily, we must address whether Appellant's claims are waived due to his failure to file a concise statement of errors complained of on appeal

---

[5] The PCRA court dismissed Appellant's petition in open court on September 15, 2021, and a copy of the order dismissing the petition was hand-delivered to both parties that same day.  The order was subsequently entered on the PCRA court docket on September 16, 2021.

[6] On October 20, 2021, the PCRA court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant responded by filing a counseled-Rule 1925(b) statement on November 10, 2021.  The PCRA court filed its Rule 1925(a) opinion on December 15, 2021.

that conformed with Pennsylvania Rule of Appellate Procedure 1925(b).[7]  This

Court previously instructed Appellant's counsel, on direct appeal,[8] that

> [i]ssues not raised in a Rule 1925(b) statement will be deemed waived for review.  An appellant's concise statement must properly specify the error to be addressed on appeal.  In other words, the Rule 1925(b) statement must be "specific enough for

---

[7] Pennsylvania Rule of Appellate Procedure 1925(b)(4) sets forth, in pertinent part, the requirements of a concise statement as follows:

> (i) The Statement shall set forth only those errors that the appellant intends to assert.
>
> (ii) The Statement shall **concisely identify** each error that the appellant intends to assert with sufficient detail to identify the issue to be raised for the judge.  The judge shall not require the citation to authorities or the record; however, appellant may choose to include pertinent authorities and record citations in the Statement.
>
> (iii) The judge shall not require any party to file a brief, memorandum of law, or response as part of or in conjunction with the Statement.
>
> (iv) The Statement **should not be redundant or provide lengthy explanations as to any error**.  Where non-redundant, non-frivolous issues are set forth in an appropriately concise manner, the number of errors raised will not alone be grounds for finding waiver.
>
> (v) Each error identified in the Statement will be deemed to include every subsidiary issue that was raised in the trial court; this provision does not in any way limit the obligation of a criminal appellant to delineate clearly the scope of claimed constitutional errors on appeal.

Pa.R.A.P. 1925(b)(4)(i-v) (emphasis added).

[8] Appellant was represented on direct appeal by the same attorney who now represents Appellant on collateral appeal of the order denying Appellant's instant PCRA petition.  Appellant had separate trial counsel.

the trial court to identify and address the issue an appellant wishes to raise on appeal." *Commonwealth v. Reeves*, 907 A.2d 1, 2 (Pa. Super. 2006), *appeal denied*, [] 919 A.2d 956 ([Pa.] 2007). "A concise statement which is too vague to allow the [trial] court to identify the issues raised on appeal is the functional equivalent of no concise statement at all." *Id.* The [trial] court's review and legal analysis can be fatally impaired when the [trial] court has to guess at the issues raised. Thus, if a concise statement is too vague, [this Court] may find waiver. *Commonwealth v. Scott*, 212 A.3d 1094, 1112 (Pa. Super. 2019) (citation omitted).

*Oh*, 2019 WL 7168105, at *2 (original brackets omitted), *quoting Commonwealth v. Sexton*, 222 A.3d 405, 413 n.3 (Pa. Super. 2019), *appeal denied*, 229 A.3d 568 (Pa. 2020). This Court, in *Oh*, *supra*, went on to find that Appellant's concise statement "read like a narrative," inarticulately framed the issues, and arguably was not specific enough to allow the trial court to identify and consider the issues. *Oh*, 2019 WL 7168105, at *3. Nonetheless, this Court did not deem Appellant's issues waived on direct appeal because the trial court's legal analysis was not fatally impaired as a result of the defects in the Rule 1925(b) statement. *Id.*

In the instant appeal, we are again faced with a Rule 1925(b) statement that reads like a narrative and inarticulately frames the issues.[9] *See* Appellant's Rule 1925(b) Statement, 11/10/21. Rule 1925(b)(4)(vii)

---

[9] Heeding no warning from this Court in *Oh*, *supra*, a comparison of the Rule 1925(b) statement filed by appellate counsel as part of Appellant's direct appeal and the Rule 1925(b) statement filed as part of the instant collateral appeal reveals that the first full paragraph, after the preamble paragraph, is almost identical in both statements. We again caution appellate counsel to avail himself of, and to conform the filing of a Rule 1925(b) statement to, the requirements set forth in Rule 1925(b)(4).

unequivocally states that "[i]ssues not included in the [s]tatement [or] not raised in accordance with the provisions of [Rule 1925(b)(4)] are waived." Pa.R.A.P. 1925(b)(4)(vii). A liberal review of Appellant's instant Rule 1925(b) statement demonstrates that he raised a claim of ineffective assistance of trial counsel for failing to impeach a prosecution witness, namely Mother, through introduction of "evidence relating to a prior incident in which [Mother] claimed violence against Appellant[] and was arrested for false allegations and assault against Appellant." *See* Appellant's Rule 1925(b) Statement, 11/10/21, at 2;[10] *see also* Appellant's Brief at 4 ¶1, PCRA Court Opinion, 12/15/21, at 5 (interpreting Appellant's Rule 1925(b) statement to include a claim of ineffective assistance of counsel "for failing to impeach [Mother] based on her [prior false allegations] of domestic violence"). Therefore, to the extent that Appellant's first issue, as set forth *supra*, raises a claim of ineffective assistance of trial counsel for failure to impeach a witness (Mother), we do not find this issue waived. Within the context of that same issue, as set forth *supra*, Appellant's claim of ineffective assistance of counsel based upon a failure to call an exculpatory witness is waived (1) for failure to raise the issue in his Rule 1925(b) statement, and (2) for failure to raise the issue in the

---

[10] For ease of reference, we have assigned page numbers to Appellant's unpaginated Rule 1925(b) statement.

PCRA court.[11]  *See* Pa.R.A.P. 1925(b)(4)(vii); *see also* Pa.R.A.P. 302 (stating

that, "[i]ssues not raised in the [PCRA] court are waived and cannot be raised

for the first time on appeal"), Appellant's Rule 1925(b) Statement, 11/10/21,

at 2, Appellant's Brief at 4 ¶1.

Regarding Appellant's second issue, as set forth *supra*, although

Appellant raised a free-standing claim of insufficient evidence to support his

convictions in his Rule 1925(b) statement, this issue is waived because

Appellant could have raised this issue on direct appeal but failed to do so.  42

Pa.C.S.A. § 9544(b) (stating that, for purposes of a petition filed pursuant to

the PCRA, "an issue is waived if the petitioner could have raised it but failed

to do so before trial, at trial, during unitary review, on appeal, or in a prior

state postconviction proceeding"); *see also* Appellant's Rule 1925(b)

---

[11] In his brief, Appellant asserts that trial counsel provided ineffective
assistance in failing to present the testimony of Dr. Daniel S. Oh, a retired
pulmonologist, to rebut the testimony provided by the Commonwealth's
medical expert on strangulation.  Appellant's Brief at 12-14 (stating, "[t]he
failure to call Dr. Oh left unrebutted a significant portion of the
[Commonwealth's] case, to [Appellant's] clear detriment").

To the extent that Appellant's counsel intended to present the testimony of
Dr. Oh at the PCRA evidentiary hearing, in support of Appellant's ineffective
assistance of counsel claim for failure to call a witness, counsel failed to
comply with 42 Pa.C.S.A. § 9545(d)(1).  *See* 42 Pa.C.S.A. § 9545(d)(1)(i)
(stating, "[w]here a petitioner requests an evidentiary hearing, the petition
shall include a certification signed by each intended witness stating the
witness's name, address, date of birth[,] and substance of testimony and shall
include any documents material to that witness's testimony"); *see also* N.T.,
9/15/21, at 4-11.

Statement, 11/10/21, at 2 (asserting that there was insufficient evidence to support his convictions, which were "based on uncorroborated testimony at trial without any physical or other supporting evidence").

Finally, our review of Appellant's Rule 1925(b) statement demonstrates that Appellant raised as his third issue that the Commonwealth violated its duty to disclose exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). *See* Appellant's Rule 1925(b) Statement, 11/10/21, at 2; *see also* 42 Pa.C.S.A. § 9543(a)(2)(i) (stating that, a petitioner is entitled to relief under the PCRA when he or she is able to plead and provide that the conviction or sentence resulted from "[a] violation of the Constitution of this Commonwealth or the Constitution or laws of the United States which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place"). Because this issue is cognizable under the PCRA, was raised in Appellant's Rule 1925(b) statement, and was considered by the PCRA court, we do not find this issue waived. We turn now to consideration of those issues that have not been waived for reasons set forth *supra*.

In addressing Appellant's issues, we are mindful of our well-settled standard and scope of review of an order dismissing a PCRA petition. Proper appellate review of a PCRA court's dismissal of a petition is limited to the examination of "whether the PCRA court's determination is supported by the record and free of legal error." *Commonwealth v. Miller*, 102 A.3d 988, 992 (Pa. Super. 2014) (citation omitted). "The PCRA court's findings will not

- 10 -

be disturbed unless there is no support for the findings in the certified record." *Commonwealth v. Lawson*, 90 A.3d 1, 4 (Pa. Super. 2014) (citations omitted). "This Court grants great deference to the findings of the PCRA court, and we will not disturb those findings merely because the record could support a contrary holding." *Commonwealth v. Hickman*, 799 A.2d 136, 140 (Pa. Super. 2002) (citation omitted). In contrast, we review the PCRA court's legal conclusions *de novo*. *Commonwealth v. Henkel*, 90 A.3d 16, 20 (Pa. Super. 2014) (*en banc*), *appeal denied*, 101 A.3d 785 (Pa. 2014).

To reiterate, Appellant's first issue raises a claim that trial counsel provided ineffective assistance of counsel for failing to impeach a Commonwealth witness, namely Mother. Appellant's Brief at 11.

"It is well-established that counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him." *Commonwealth v. Koehler*, 36 A.3d 121, 132 (Pa. 2012), *citing* *Strickland v. Washington*, 466 U.S. 668, 687-691 (1984). In order to plead and prove a claim of ineffective assistance of counsel, "a petitioner must establish: (1) that the underlying issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice resulted from counsel's act or failure to act." *Commonwealth v. Stewart*, 84 A.3d 701, 706 (Pa. Super. 2013) (*en banc*), *appeal denied*, 93 A.3d 463 (Pa. 2014). "A claim of ineffectiveness will be denied if the petitioner's evidence fails to meet any of these prongs." *Commonwealth v. Martin*, 5 A.3d 177, 183 (Pa. 2010).

Moreover, a failure to impeach a key witness "is considered ineffective in the absence of a reasonable strategic basis for not impeaching." ***Commonwealth v. Small***, 980 A.2d 549, 565 (Pa. 2009).

Here, Appellant baldly asserts, with no further development of an argument in support of his assertion, that trial counsel was ineffective for failing to "introduce evidence that [Mother,] the Commonwealth's key witness, was prone to lies herself and has a history of violence against [Appellant]." Appellant's Brief at 11. In his Rule 1925(b) statement, Appellant contends that his son's claims of an altercation between Appellant and son, and the son's suffering of physical abuse by Appellant "were corroborated only by [Mother], who has her own history of false allegations of violent abuse against Appellant, which were not raised." Appellant's Rule 1925(b) Statement, 11/10/21, at 1. Finally, in his PCRA petition, Appellant simply states, "[Appellant] alleged at the time of trial and continues to allege that [Mother] has a history of violence and making false statements to police" and that trial counsel was ineffective for not using "this history to impeach [Mother's] credibility at trial." PCRA Petition, 2/14/20, at ¶10.

In finding that Appellant's claim of ineffective assistance of trial counsel did not give rise to collateral relief, the PCRA court stated,

> The only evidence [Appellant] submitted in support of his instant claim consists of [Appellant's] testimony as to an alleged January 2016 domestic altercation between [Appellant] and [Mother]. The record in this regard is, at best, muddled and [] the alleged charges against [Mother] were expunged. While [Appellant] testified that he asked trial counsel to pursue introduction of the alleged evidence, trial counsel's credible explanation for not doing

- 12 -

so, namely that [Mother] obtained a PFA [order] against [Appellant] on their son's behalf, was entirely appropriate[.]

Trial counsel's [] basis for not delving into [Mother's] alleged history of domestic violence was wholly reasonable given that doing so could have ["]opened the door["] to [Appellant's] own role in these domestic altercations [between Appellant and Mother]. Moreover, given trial counsel's testimony that he discussed this issue and his related concerns with [Appellant], who was "actually in agreement," [Appellant] failed to preserve any claim relating to the admission of [Mother's] alleged history of domestic violence.

Further miring [Appellant's] instant claim that trial counsel was ineffective for not attempting to introduce [Mother's] alleged history of domestic violence to impeach her credibility, and argue it served as a basis for her to fabricate the underlying allegations, are the potential complications attending the admissibility of this alleged evidence. More specifically, given [Appellant's] testimony as to the proactive steps he took of his own volition to facilitate the expungement of [Mother's] alleged criminal record, any evidence of her arrest [and] record would have been precluded. Putting aside trial counsel's justified and reasonable concerns [of "]opening the door["] as to [Appellant's] own domestic violence, the expunged nature of the incident about which [Appellant] now complains created additional evidentiary and pragmatic obstacles to its introduction, let alone its potential admission. As such, [Appellant] failed to meet his initial burden of demonstrating that the proffered evidence of [Mother's] alleged history of violence would have [been] admissible in the first instance. Moreover, even if admissible, trial counsel's concerns about ["]opening the door["] to evidence that might further tarnish [Appellant's] character, bolstering the Commonwealth's case against him, were wholly reasonable.

PCRA Court Opinion, 12/15/21, at 7, 9-10 (case citations, footnotes, and extraneous capitalization omitted).

At the PCRA evidentiary hearing, trial counsel testified that, at the time of Appellant's trial, he believed D.O. was lying about the altercation between D.O. and Appellant and, as such, his trial strategy was to attack the credibility

- 13 -

of D.O.  N.T., 9/15/21, at 86, 96 (stating, "I thought [D.O.'s] credibility was the important issue").  Trial counsel did not see the credibility of Mother as the focus of the case.  *Id.* at 85.  Trial counsel explained, "[Mother] was not the alleged victim in this case[, and] the majority of all the testimony that was presented against [Appellant] was very focused on the version of events [D.O.] presented[.]"  *Id.* at 82-83.  "So the general strategy was to prove that [D.O.] was a liar."  *Id.* at 81.

At the hearing, Appellant asserted that trial counsel provided ineffective assistance of counsel for not attacking the credibility of Mother.  *Id.* at 13. Appellant testified that, prior to trial, he discussed with trial counsel an incident in which Mother assaulted Appellant in January 2016.  *Id.* at 13, 29. Appellant described the incident as follows:

> [Mother] ripped my clothes off, scratched [me] all over.  And I couldn't handle her anymore.  So I let her go.  And then I told her I was calling the police.  But because she is my wife, I couldn't really call the police.
>
> But then she called the police.  And then the police came.  And when the police came, [Mother] was okay.  [S]he didn't have any problems.  But the police saw me.  And all my clothes were ripped. I had scratches all over.  I was bleeding.  So she was arrested.

*Id.* at 21.  Appellant averred that Mother was charged with assault but that, ultimately, the charges were dismissed because, as Appellant contended, he wrote a letter to the presiding magisterial district judge and requested that the charges be dismissed.  *Id.* at 21-28, 47-48.

When asked why he did not raise the subject of the domestic trouble between Appellant and Mother at trial, trial counsel responded,

> I did not want to open the door to evidence being presented about any history of domestic abuse, domestic disputes. I didn't want to get into arguments between [Appellant] and [Mother]. I thought that would be opening the door to evidence and testimony that might be detrimental to [Appellant's] case.

> I think it would just show [Appellant] in a bad light. I didn't want [Mother] to open it up and start talking about other instances of abuse, domestic violence, maybe between the two of them. I just didn't think that was going to be to his benefit.

*Id.* at 54. Trial counsel described his decision to forgo use of this information as a "strategic decision" that he discussed with Appellant prior to trial and Appellant agreed with trial counsel's decision. *Id.* at 55, 81 (stating, "I didn't want [Mother] to be on the stand talking about other instances where she was accusing [Appellant] of doing violent things").

Based upon our review of the record, we concur with the PCRA court that trial counsel's strategic decision for not attempting to impeach Mother's credibility by questioning her regarding the January 2016 domestic incident between Mother and Appellant was reasonable. Trial counsel focused on impeaching the credibility of the victim, D.O., who trial counsel believed was not telling the truth. Mother's testimony recalled the incident between Appellant and D.O. based upon the information provided to her by D.O. because she was not present when the event occurred. Moreover, Mother's testimony that D.O. told her that he hit his head in the bathroom and that she did not observe signs that D.O. had been punched or strangled when she

examined D.O. on the day of the incident supported trial counsel's strategy that D.O. was untruthful in his version of events. To impeach Mother's credibility would have been more harmful than beneficial in light of these circumstances. Therefore, we concur with the PCRA court that Appellant failed to plead and prove a claim of ineffective assistance of trial counsel based upon a failure to impeach Mother. Consequently, Appellant's first issue is without merit.

Appellant's remaining issue raises a claim that the Commonwealth violated **Brady**, **supra**, when it failed to disclose exculpatory evidence.

> In **Brady**, the United States Supreme Court held that "suppression by the prosecution of favorable evidence to an accused upon request violates due process where the evidence is material either to guilt or to punishment . . . ." **Brady**, 373 U.S. at 87[.] **Brady**'s mandate is not limited to pure exculpatory evidence; impeachment evidence also falls within **Brady**'s parameters and therefore must be disclosed by prosecutors. [**United States**] **v. Bagley**, 473 U.S. 667, 677[] (1985). However, "the prosecutor is not required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial." **Id.** at 675[.]
>
> [T]o establish a **Brady** violation, a defendant must demonstrate that: (1) the evidence was suppressed by the Commonwealth, either willfully or inadvertently; (2) the evidence was favorable to the defendant; and (3) the evidence was material, in that its omission resulted in prejudice to the defendant. [**Commonwealth v.**] **Dennis**, 17 A.3d [297,] 308 [(Pa. 2011)]. The burden rests with the defendant to "prove, by reference to the record, that evidence was withheld or suppressed by the prosecution." **Commonwealth v. Paddy**, [] 15 A.3d 431, 451 ([Pa.] 2011). The withheld evidence must have been in the exclusive control of the prosecution at the time of trial. No **Brady** violation occurs when the defendant knew, or with reasonable diligence, could have discovered the evidence in question.

- 16 -

Similarly, no violation occurs when the evidence was available to the defense from a non-governmental source. *Id.*

***Commonwealth v. Haskins***, 60 A.3d 538, 546 (Pa. Super. 2012), *appeal denied*, 78 A.3d 1090 (Pa. 2013).

Here, Appellant contends,

the Commonwealth had in [its possession] reports of domestic violence in the alleged residence wherein [Mother] falsely reported [an] assault [by Appellant]. Despite her calling 911, the arriving [police] officers immediately arrested her after visibly seeing both [Mother and Appellant] in the residence. She claimed otherwise in her PFA [petition], stating that the police [officers] did not listen to her despite her injuries. She claimed the same choking and even brutal biting that left her [with] a scar. Yet the police [officers] saw nothing to corr[o]borate her statements but rather found [Appellant] to be a peaceful victim [of] a domestic disturbance. That report and those charges should have [] come into evidence in [Appellant's] favor. The Commonwealth, which purports to defend the truth, has the enduring duty to disclose any relevant exculpatory evidence in their possession, and the fact that false claims of abuse had previously been alleged against [Appellant] is both relevant and potentially exculpatory.

Appellant's Brief at 19-20.

At the evidentiary hearing, Appellant testified that "all this information" pertaining to the January 2016 incident between Appellant and Mother "was provided to" trial counsel prior to the start of trial. N.T., 9/15/21, at 13. Appellant affirmed that he "discussed this matter with [his] attorney" at the time of trial. *Id.* at 26. Trial counsel further confirmed that he was aware of the January 2016 incident because he made a strategic decision not to use this information in an attempt to impeach Mother's credibility. *Id.* at 54.

Based upon a review of the record, we concur with the PCRA court that "[i]t seems pretty clear [] that [Appellant] was well aware of [the January 2016 information] and obviously had access to" this information prior to trial. *Id.* at 26. Because Appellant and his trial counsel were aware of this information prior to trial, Appellant's claim that the Commonwealth violated *Brady*, *supra*, for failing to disclose this information is without merit.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/23/2022