J-S09009-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| DARRIN BATTLE | : | |
| Appellant | : | No. 1242 EDA 2025 |

Appeal from the Judgment of Sentence Entered March 20, 2025
In the Court of Common Pleas of Chester County Criminal Division at
No(s): CP-15-CR-0003206-2022

BEFORE:   MURRAY, J., LANE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY MURRAY, J.:                    **FILED MAY 4, 2026**

Darrin Battle (Appellant) appeals from the judgment of sentence imposed after a jury convicted him of one count of stalking, 18 Pa.C.S.A. § 2709.1(a)(2). Additionally, Appellant's court-appointed conflict counsel, Scott J. Werner, Esquire (Attorney Werner), has filed a petition to withdraw as counsel and accompanying brief pursuant to **Anders v. California**, 386 U.S. 738 (1967), and **Commonwealth v. Santiago**, 978 A.2d 349, 361 (Pa. 2009). Upon review, we grant Attorney Werner's petition to withdraw and affirm Appellant's judgment of sentence.

**Factual History**

_____

[*] Former Justice specially assigned to the Superior Court.

The evidence presented at Appellant's jury trial[1] established that, in June 2022, Appellant was in a romantic relationship with K.D. (Victim). Appellant resided with Victim and her minor son (D.W.) in an apartment (Victim's residence) in Spring City, Chester County. N.T., 2/10/25, at 14. On June 28, 2022, while Appellant and Victim were inside Victim's residence, they got into an argument regarding Appellant's communications with another woman. *Id.* at 16. Victim ended the argument, entered a bedroom, and shut the door. *Id.* at 16-17; *see also id.* at 17 (Victim testifying she accidentally picked up Appellant's cell phone—which looked like hers—and took it with her into the bedroom). Shortly thereafter, Appellant began pounding on the door and yelling, demanding that Victim return Appellant's phone. *Id.* at 17. Victim opened the door and threw the phone at Appellant, which hit him in the chest. *Id.* at 18. Appellant became enraged, grabbed Victim, choked her with two hands, and said, "Bitch Imma kill you." *Id.* at 18, 19. Victim lost consciousness. *Id.* at 19. When Victim awoke, she was dizzy and disoriented, and noticed that Appellant had left Victim's residence. *Id.* at 19-20.[2]

_____

[1] Appellant was represented during trial and sentencing by Alexander Silow, Esquire (Trial Counsel).

[2] Victim further testified regarding a prior domestic violence incident that occurred on June 7, 2022. N.T., 2/10/25, at 29. During an argument at Victim's residence about Appellant's communications with another woman, Appellant "grabbed [Victim] around [her] neck," causing injury and bruising. *Id.* The Commonwealth introduced into evidence pictures depicting the bruising. *Id.*, Commonwealth Exhibit 4.

A few days later, Victim spoke with Appellant and asked him to vacate Victim's residence, which he did. *Id.* at 28-29. Victim expressly told Appellant, on multiple occasions, that she did not want him to have any contact with her. *Id.* at 36, 39, 43, 44-45. However, Victim testified that throughout July and August 2022, Appellant engaged in a course of conduct of "stalking and harass[ing]" her. *Id.* at 37. Specifically, Appellant continued to repeatedly text and call Victim, and would show up outside Victim's residence, unannounced and without being invited. *Id.* at 33-34.

The Commonwealth introduced into evidence Victim's cell phone records, which showed that she had received numerous missed calls and text messages from Appellant after the termination of their relationship. *Id.*, Commonwealth Exhibits 6-8 (text messages), 9 (call log). In the text messages, Victim repeatedly told Appellant to stop contacting her. *Id.*, Commonwealth Exhibit 6. Victim further warned Appellant in a text message that he could "go[] to jail for harassment" if he persisted. *Id.* (capitalization modified). In response, Appellant texted Victim, stating, "I am not playing[.] I'm going to jail anyway[.]" *Id.*, Commonwealth Exhibit 7.

Victim testified that she informed law enforcement about Appellant's behavior. *Id.* at 37, 44-45. Victim asserted that, at her prompting, Spring City Police Officer Kevin Deegan (Officer Deegan), contacted Appellant and warned him to stop contacting Victim, but "[Appellant] didn't stop doing anything[.]" *Id.* at 38; *see also id.*, Commonwealth Exhibit 8 (Victim texting Appellant, "Police clearly told you that if you contact me again I'm telling

- 3 -

police. You've already texted me & I ignored it, now you calling me?"). Victim further stated that she had blocked Appellant's phone number on her cellular phone, but this did not prevent Appellant from contacting her, as he utilized various phone numbers that were not blocked on Victim's phone. *Id.* at 41; *see also id.*, Commonwealth Exhibits 6-9.

Victim further testified regarding an incident that occurred outside of Victim's residence on September 15, 2022. Victim saw Appellant running outside of her apartment complex, became "terrified" at his presence, and called the police. *Id.* at 51; *see also id.* (Victim explaining she was fearful because "[Appellant] made irrational statements. There was no reason for [Appellant] to be there. …. I didn't know [Appellant] was there."). The Commonwealth also introduced video evidence, captured by Victim's doorbell security camera, which showed Appellant banging on the front door of Victim's residence. *Id.* at 34-36; *see also* Commonwealth Exhibit 5.

Victim then described the detrimental impacts Appellant's conduct had upon her emotional state:

> I have [post-traumatic stress disorder], me and [D.W.], so I'm
> very uncomfortable all the time. I'm afraid of the dark. I don't
> go anywhere. I'm afraid of men.

*Id.* at 51.

The Commonwealth next presented testimony from D.W., who was 12 years old at the time of trial. D.W. testified that he was at Victim's residence on June 28, 2022, and witnessed the altercation between Appellant and

Victim. N.T., 2/11/25, at 7. D.W. stated that Appellant and Victim "got mad at each other, and they started arguing, and [Appellant] strangled [Victim] on the couch." *Id.* D.W. elaborated that he "saw [Appellant's] hands on [Victim's] neck," and that Appellant choked Victim for "a couple of seconds." *Id.* at 10. D.W. also confirmed Victim's account of seeing Appellant in the area of Victim's residence on September 15, 2022. *Id.* at 13. D.W. further testified that, after Victim kicked Appellant out of Victim's residence, D.W. saw Appellant in the area of Victim's residence "multiple times[.]" *Id.*

The Commonwealth also presented testimony from Officer Deegan. Officer Deegan stated that after speaking with Victim regarding Appellant's harassing behavior, Officer Deegan called Appellant on the phone and informed him that Victim "didn't want to have any further communications with [Appellant]." *Id.* at 31. Following this call, Officer Deegan called Victim and informed her that Appellant had agreed to stop contacting Victim. *Id.*

### Procedural History

By criminal complaint filed on September 30, 2022, the Commonwealth charged Appellant, in the instant case, with stalking (as well as other charges that the Commonwealth subsequently withdrew). In a separate criminal case, CP-15-CR-1145-2023 (Case 1145), which pertained to Appellant's above-described domestic violence perpetrated against Victim in June 2022, the Commonwealth charged Appellant with, *inter alia*, one count each of simple

assault, aggravated assault, strangulation, terroristic threats, and recklessly endangering another person.[3]

On January 31, 2023, Appellant filed a *pro se* motion to dismiss the charges in the instant case, asserting a violation of his speedy trial rights pursuant to Pa.R.Crim.P. 600 (Rule 600), which we discuss *infra*.[4] By an order entered on February 17, 2023, the trial court denied Appellant's Rule 600 motion, without prejudice. The court, observing that Appellant was represented by counsel when he filed his *pro se* motion, determined his filing was a legal nullity. Order, 1/31/23, n.1; *see also Nischan*, 928 A.2d at 355.

On September 18, 2023, Appellant filed a counseled petition for release on nominal bail pursuant to Pa.R.Crim.P. 600(B)(1) (providing that "no defendant shall be held in pretrial incarceration in excess of … 180 days from the date on which the complaint is filed"). After conducting a hearing on Appellant's petition on November 22, 2023, the trial court granted relief and

---

[3] 18 Pa.C.S.A. §§ 2701(a)(1), 2702(a)(1), 2706(a)(1), 2705.

[4] Appellant was represented by court-appointed counsel at the time he filed his Rule 600 motion. As the trial court observed, "[t]hroughout the pendency of this matter, [Appellant] has vacillated continually between a desire to proceed with counsel and a desire to proceed *pro se*," and **Appellant has had five court-appointed counsel**. Order, 7/18/25, at 1 n.3. Because Appellant was represented by counsel when he filed his *pro se* Rule 600 motion, it was a legal nullity. *See Commonwealth v. Jette*, 23 A.3d 1032, 1035, 1036 (Pa. 2011) (emphasizing that "there is no constitutional right to hybrid representation either at trial or on appeal," and "long-standing policy [] precludes hybrid representation."); *Commonwealth v. Nischan*, 928 A.2d 349, 355 (Pa. Super. 2007) (stating that a *pro se* motion filed while the defendant was represented by counsel is a legal "nullity").

set nominal bail. *See* Commonwealth's Motion to Revoke and/or Increase Bail, 6/7/24, ¶ 3 (stating that Appellant's "[b]ail was modified to $1.00 nominal on November 22, 2023[,] and was posted on December 1, 2023.").[5]

On October 21, 2024, Appellant filed another *pro se* motion to dismiss the Commonwealth's case pursuant to Rule 600.[6] On December 6, 2024, Appellant, through newly-appointed counsel, filed a "Motion for Reconsideration" pertaining to Appellant's Rule 600 motion. The Commonwealth filed a response on December 16, 2024.

The trial court consolidated the instant case and Case 1145 for trial purposes, and the matter proceeded to a jury trial on February 10-11, 2025. *See* Pa.R.Crim.P. 582 (governing joinder of separate indictments for trial). Appellant elected not to testify. Following the conclusion of the Commonwealth's evidence, Appellant made an oral motion for judgment of acquittal on the stalking charge. N.T., 2/11/25, at 44-45. The trial court denied the motion. *Id.* at 45.

At the close of trial, the jury found Appellant guilty of stalking. *Id.* at 103. Regarding Case 1145, the jury found Appellant guilty of simple assault and acquitted him of the remaining charges. *Id.*

_____

[5] The Commonwealth also asserted that Appellant had continued to send unwanted text messages to Victim after the charges in this case were filed, and attached copies of the texts as an exhibit. Commonwealth's Motion to Revoke and/or Increase Bail, 6/7/24, Exhibit C.

[6] The trial court issued no ruling upon Appellant's renewed motion to dismiss.

The trial court sentenced Appellant on March 20, 2025. In the instant case, the court imposed 30 to 60 months' imprisonment on the stalking conviction. In Case 1145, Appellant received a time-served sentence.[7] The trial court also ordered Appellant to have no contact with Victim or Victim's family.

On March 31, 2025, Appellant, though still represented by Trial Counsel, filed two *pro se* documents: (1) a post-sentence motion; and (2) a motion to proceed *pro se*. Regarding the latter document, Appellant asserted that Trial Counsel had abandoned him, and requested that the court either permit Appellant to proceed *pro se* or enter a declaration as to Trial Counsel's abandonment.[8] Motion, 3/31/25, at 3 (unpaginated).

In his *pro se* post-sentence motion, Appellant challenged, *inter alia*, (1) the sufficiency of the evidence supporting his stalking conviction; (2) the weight of the evidence supporting the conviction; and (3) the trial court's denial of Appellant's Rule 600 motion to dismiss. Post-Sentence Motion, 3/31/25, ¶¶ 11, 14-16, 22. On May 13, 2025, while his post-sentence motion was still pending, Appellant filed a *pro se* notice of appeal.[9]

_____

[7] Appellant did not file an appeal in Case 1145.

[8] Appellant did not expressly request the appointment of new counsel.

[9] Pursuant to Pa.R.Crim.P. 720(A)(2), an appellant may not file a direct appeal while a post-sentence motion is still pending. However, this Court has previously stated that if a notice of appeal is filed prematurely, and the trial
*(Footnote Continued Next Page)*

On May 22, 2025, the trial court entered an order directing Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.[10] Trial Counsel did not respond to the Rule 1925(b) order. However, on June 13, 2025, Appellant filed a *pro se* request for an extension of time to file a Rule 1925(b) statement, which the trial court granted. On July 9, 2025, Appellant filed a *pro se* concise statement.

In the interim, on July 2, 2025, Appellant filed a *pro se* Motion to Remove Counsel and Appoint Appellate Counsel. Appellant alleged Trial Counsel had ignored Appellant's "multiple" requests for Counsel "to file a post sentence motion and other legal documents[.]" Motion to Remove Counsel, 7/2/25, ¶ 3; *see also id.* ¶ 4 (Appellant pointing out he was forced to file his notice of appeal *pro se*).

On July 18, 2025, the trial court entered an order in which it (1) withdrew Trial Counsel's appearance; and (2) appointed Attorney Werner to

_____

court subsequently denies the post-sentence motion, we will treat the appellant's premature notice of appeal as having been properly filed after the entry of the order denying the post-sentence motion. *See Commonwealth v. Ratushny*, 17 A.3d 1269, 1271 n.4 (Pa. Super. 2011) (relying upon Pa.R.A.P. 905(a)(5) ("A notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof.")). We address the propriety and timeliness of Appellant's notice of appeal *infra*.

[10] The trial court docket reflects this order was served upon Trial Counsel, Appellant's counsel-of-record.

represent Appellant.[11]   In its order, the court observed that Appellant had been previously "represented by no fewer than four court-appointed attorneys[.]"   Order, 7/18/25, at 1 n.3; *see also id.* (observing that Appellant, "[t]hroughout the pendency of this matter, [] has vacillated continually between a desire to proceed with counsel and a desire to proceed *pro se*.").  The trial court stated that Appellant "has now informed [the court] that he *does* wish to exercise his right to appellate counsel."  *Id.* (italics in original).  Thus, the court appointed Attorney Werner and directed him to file a Rule 1925(b) concise statement within 30 days of the order.  *Id.* at 1-2.

On August 15, 2025, Attorney Werner filed a Statement of Intent to File an *Anders* Brief Pursuant to Pa.R.A.P. 1925(c)(4).

On August 28, 2025, over five months after Appellant filed his *pro se* post-sentence motion, the trial court entered an order denying the motion.[12]  *See* Order, 8/28/25, n.1 (citing Pa.R.Crim.P. 720(B)(3)(a)).  The trial court acknowledged the failure of the clerk of courts to enter an order denying

_____

[11] The trial court did not make a finding as to whether Trial Counsel abandoned Appellant.

[12] The trial court clerk of courts did not enter an order deeming Appellant's post-sentence motion denied by operation of law after 120 days, consistent with Rule 720 of our Rules of Criminal Procedure.  Pa.R.Crim.P. 720(B)(3)(a) and (c) (providing that "[i]f the judge fails to decide the motion within 120 days, or to grant an extension as provided in paragraph (B)(3)(b), the motion shall be deemed denied by operation of law[,]" and the clerk of courts shall enter an order on behalf of the court, and serve it on the parties, reflecting the denial).

Appellant's post-sentence motion by operation of law, and stated, "[t]his order serves to memorialize the denial." ***Id.***; ***see also Commonwealth v. Patterson***, 940 A.2d 493, 99 (Pa. Super. 2007) ("[T]he trial court's failure to comply with Rule 720 constitutes a breakdown that excuses the untimely filing of [a]ppellant's notice of appeal.").

Also on August 28, 2025, the trial court issued a brief Statement in lieu of a Pa.R.A.P. 1925(a) opinion.

On October 8, 2025, Attorney Werner filed in this Court his ***Anders*** Brief and a separate petition to withdraw as counsel. Appellant did not file a *pro se* brief or otherwise respond to the petition to withdraw.

On October 14, 2025, this Court issued a rule upon Appellant to show cause why his appeal should not be quashed as untimely filed. Attorney Werner filed a response on November 3, 2025. This Court subsequently discharged the rule and referred the matter to the merits panel. Order, 1/7/26.

The ***Anders*** Brief raises three issues for our review, which we summarize as follows:[13]

1) Whether Appellant's stalking conviction is supported by sufficient evidence?

---

[13] In the ***Anders*** Brief's statement of questions presented section, Attorney Werner asserts merely, "Are there any non-frivolous issues preserved on appeal?" ***Anders*** Brief at 7 (capitalization modified). However, Attorney Werner identifies and elaborates upon Appellant's issues in the argument section. ***Id.*** at 16-24.

2) Whether Appellant's speedy trial rights under Pa.R.Crim.P. 600 were violated?

3) Whether Appellant's stalking conviction is against the weight of the evidence?

*See Anders* Brief at 16-24.

### Timeliness of Appeal

Preliminarily, we address the timeliness of this appeal. *See Commonwealth v. Reid*, 235 A.3d 1124, 1170 (Pa. 2020) ("The timeliness of an appeal … [goes] to the jurisdiction of [an appellate] Court and its competency to act." (citation omitted)). Pennsylvania Rule of Appellate Procedure 903(a) requires an aggrieved party to file a notice of appeal "within 30 days after the entry of the order from which the appeal is taken." Pa.R.A.P. 903(a). Generally, a timely-filed post-sentence motion will toll the 30-day appeal period. Pa.R.Crim.P. 720(A)(2)(a)-(c).

Instantly, because Appellant was represented by Trial Counsel when he filed his *pro se* post-sentence motion, it might facially appear to be a legal nullity. *See also Nischan*, 928 A.2d at 355. However, as the record reflects that Trial Counsel effectively abandoned Appellant after sentencing, we do not deem Appellant's *pro se* motion to be a legal nullity, and conclude it tolled the period for filing a timely notice of appeal. *See Commonwealth v. Leatherby*, 116 A.3d 73, 79 (Pa. Super. 2015) (deeming appellant's appeal timely filed, and stating his *pro se* post-sentence motion "does not offend considerations of hybrid representation"—and tolled the appeal period

- 12 -

pursuant to Rule 720(A)—where the appellant "was effectively abandoned by counsel and the trial court failed to timely appoint new counsel" (footnote and emphasis omitted)); Trial Court Statement, 8/28/25, at 1 n.2 (deeming Appellant's appeal timely); *see also Commonwealth v. Hopkins*, 228 A.3d 577, 580-81 (Pa. Super. 2020) ("[W]hen a counseled defendant files a *pro se* notice of appeal, the appeal is not a legal nullity[,] and has legal effect." (citation omitted)).

### *Anders/Santiago* Compliance

We next address whether Attorney Werner complied with the requirements of *Anders* and *Santiago*. *See Commonwealth v. Goodwin*, 928 A.2d 287, 290 (Pa. Super. 2007) (*en banc*) (stating that "[w]hen faced with a purported *Anders* brief, this Court may not review the merits of any possible underlying issues without first examining counsel's request to withdraw."). Counsel seeking to withdraw pursuant to *Anders* must satisfy certain procedural and substantive requirements. *Commonwealth v. Tejada*, 176 A.3d 355, 358 (Pa. Super. 2017). Procedurally, counsel must:

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the *Anders* brief to the appellant; and 3) advise the appellant that he or she has the right to retain private counsel or raise additional arguments that the appellant deems worthy of the court's attention.

*Commonwealth v. Gabra*, 336 A.3d 1052, 1056 (Pa. Super. 2025) (citation omitted).

- 13 -

Substantively, counsel must file an *Anders* brief, in which counsel

(1) provide[s] a summary of the procedural history and facts, with citations to the record; (2) refer[s] to anything in the record that counsel believes arguably supports the appeal; (3) set[s] forth counsel's conclusion that the appeal is frivolous; and (4) state[s] counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361; *see also Commonwealth v. Smith*, 700 A.2d 1301, 1304 (Pa. Super. 1997) ("[C]ounsel seeking to withdraw under *Anders* is required to flag any issues that the defendant wishes to raise, as well as any other claims necessary to the effective appellate presentation of those issues.").

Here, our review of Attorney Werner's *Anders* Brief and petition to withdraw reveals that he has substantially complied with the requirements of *Anders*/*Santiago*. *See Commonwealth v. Reid*, 117 A.3d 777, 781 (Pa. Super. 2015) (stating that substantial, albeit imperfect, "compliance with th[e] requirements [of *Anders*] is sufficient." (citation omitted)).[14]

---

[14] We remind Attorney Werner that

[**a**] **proper *Anders* brief does not explain why the issues are frivolous** and does not develop arguments against the appellant's interests. Rather, the brief articulates the issues in **neutral** form, cites relevant legal authorities, references appropriate portions in the record to aid our review, and concludes that, after a thorough review of the record, the appeal is wholly frivolous.

*(Footnote Continued Next Page)*

- 14 -

In the **Anders** brief, Attorney Werner provided a detailed summary of the facts and procedural history, with citation to the record. **See Anders** Brief at 8-11, 13-16. Attorney Werner also identified three issues—discussed *infra*—that arguably could support Appellant's appeal, and explained Attorney Werner's reasons for determining why each issue was frivolous. **See Anders** Brief at 16-24.

In his petition to withdraw, Attorney Werner stated he made a "conscientious review of the record" and concluded Appellant's appeal is "wholly frivolous." Petition to Withdraw, 1/8/26, ¶ 6. Additionally, Attorney Werner mailed Appellant correspondence informing him of Attorney Werner's intention to withdraw, and advising Appellant of his right to retain new counsel or proceed *pro se* to raise additional claims. **Id.**, Exhibit D (correspondence dated Oct. 8, 2025); **see also Commonwealth v. Millisock**, 873 A.2d 748, 752 (Pa. Super. 2005) (requiring counsel who seeks to withdraw pursuant to **Anders** to "attach to [a] petition to withdraw a copy of the letter sent to the[] client advising him or her of their rights."). The record further reflects that

_____

**Commonwealth v. Wrecks**, 931 A.2d 717, 720 (Pa. Super. 2007) (internal citations omitted; emphasis added); **see also Commonwealth v. Vilsaint**, 893 A.2d 753, 758 (Pa. Super. 2006) ("A brief that essentially argues for affirmance is unacceptable." (citation omitted)); **Smith**, 700 A.2d at 1303 ("A brief pointing out the flaws in the issues presented is not the proper form of an **Anders** brief, as this approach operates to deny a defendant the assistance of counsel."). Instantly, although Attorney Werner's **Anders** brief does not advance Appellant's issues in neutral form, **see Wrecks**, **supra**, we conclude that the brief nevertheless substantially complies with **Anders** and its progeny. **Reid**, 117 A.3d at 781.

Attorney Werner furnished Appellant with copies of the petition to withdraw and the *Anders* Brief.

Because Attorney Werner has substantially complied with the requirements of *Anders* and *Santiago*, we will address the issues presented in the *Anders* Brief, and conduct an independent review of the record to determine if the appeal is, in fact, wholly frivolous. *See Commonwealth v. Dempster*, 187 A.3d 266, 272 (Pa. Super. 2018) (*en banc*) (stating that "part and parcel of *Anders* is our Court's duty to review the record to insure no issues of arguable merit have been missed or misstated.").

**Merits Analysis**

In his first issue, Appellant claims the trial court erred in determining that his conviction of stalking is supported by sufficient evidence. *Anders* Brief at 16-18;[15] *see also* N.T., 2/11/25, at 45 (trial court denying Appellant's motion for judgment of acquittal related to the stalking charge).

"Whether sufficient evidence exists to support the verdict is a question of law; our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Walls*, 144 A.3d 926, 931 (Pa. Super. 2016) (citation omitted).

_____

[15] We observe that Appellant, in his July 9, 2025, *pro se* Rule 1925(b) concise statement, asserted the Commonwealth had failed to prove beyond a reasonable doubt "evidence of a true threat of violence made by [Appellant,]" as well as the requisite *mens rea* to support a conviction of stalking. Concise Statement, 7/9/25, ¶¶ 1-2.

In conducting sufficiency review, we consider whether the evidence introduced at trial and all reasonable inferences derived therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish the elements of the offense beyond a reasonable doubt. Our review does not involve reweighing the evidence and substituting our judgment for that of the fact-finder. In addition, the facts and circumstances need not be absolutely incompatible with the defendant's innocence; rather, the question of any doubt is for the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances.

***Commonwealth v. Muhammad***, 335 A.3d 1047, 1051 (Pa. 2025) (citation omitted).

This Court has stated that

[i]t is within the province of the factfinder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the factfinder.

***Commonwealth v. Scott***, 325 A.3d 844, 849 (Pa. Super. 2024) (citation and brackets omitted). Further, "even the uncorroborated testimony of a single witness may alone be sufficient to convict a defendant." ***Commonwealth v. Crosley***, 180 A.3d 761, 768 (Pa. Super. 2018) (citation omitted).

In relevant part, section 2709.1 of our Crimes Code defines the offense of stalking as follows:

**(a) *Offense defined.*** A person commits the crime of stalking when the person []:

* * *

- 17 -

**(2)** engages in a course of conduct or repeatedly communicates to another person under circumstances which demonstrate or communicate either an intent to place such other person in reasonable fear of bodily injury or to cause substantial emotional distress to such other person.

18 Pa.C.S.A. § 2709.1(a)(2).

The Crimes Code defines "communicates" as conveying "a message without intent of legitimate communication or address by oral, nonverbal, written or electronic means, including telephone, electronic mail, Internet, facsimile, telex, wireless communication or similar transmission." **Id.** § 2709.1(f). "Course of conduct" is defined, in relevant part, as a

pattern of actions composed of more than one act over a period of time, however short, evidencing a continuity of conduct. The term includes lewd, lascivious, threatening or obscene words, language, drawings, caricatures or actions, either in person or anonymously.

**Id.**

Instantly, the evidence presented at trial established that Appellant physically assaulted Victim at Victim's residence on two occasions in June 2022. N.T., 2/10/25, at 18-19, 29. Victim thereafter ejected Appellant from Victim's residence and blocked Appellant's phone number on Victim's cellular phone. **Id.** at 28-29, 41. Victim, on multiple occasions, expressly and unambiguously told Appellant to have no contact with her. **Id.** at 36, 39, 43, 44-45. In fact, after receiving multiple unwanted texts and calls from Appellant, Victim warned Appellant, in a text message, that he could "go[] to

jail for harassment" if he persisted. *Id.*, Commonwealth Exhibit 6 (capitalization modified).

Additionally, Officer Deegan spoke with Appellant and advised him to stop contacting Victim or he could face criminal charges. *Id.* at 38. Nevertheless, Appellant was undeterred and engaged in a course of conduct of repeatedly attempting to contact Victim by phone, and showing up in-person at Victim's residence, from which he knew he was barred. *See*, *e.g.*, *id.* at 33-34, 37, 41-45. Victim testified that Appellant's actions caused her, and D.W., emotional distress and fear. *Id.* at 51. Moreover, D.W. corroborated Victim's testimony, testifying that after Appellant moved out of Victim's residence, D.W. saw Appellant in the area "multiple times[.]" N.T., 2/11/25, at 13.

Viewed in the light most favorable to the Commonwealth as the verdict winner, the above-described testimony was sufficient to support Appellant's stalking conviction. Appellant had a history of domestic violence perpetrated against Victim. After their relationship ended, Appellant engaged in a course of conduct of repeatedly contacting Victim, despite express requests from Victim, and law enforcement, that Appellant cease and desist. In addition to texting and calling Victim on myriad occasions, Appellant appeared at Victim's residence multiple times. The sheer quantity of Appellant's repeated communications and unannounced appearances at Victim's residence, as well as the substance of the communications, evidences Appellant's "intent to place

[Victim] in reasonable fear of bodily injury or to cause [Victim] substantial emotional distress[.]" 18 Pa.C.S.A. § 2709.1(a)(2); *see also* N.T., 2/10/25, Commonwealth Exhibit 7 (Appellant's text to Victim, sent in response to Victim's warning to Appellant that he could face criminal charges if he continued his harassing behavior, wherein Appellant stated, "I am not playing[.] I'm going to jail anyway[.]").

Accordingly, we conclude the jury had ample evidence upon which to convict Appellant of stalking. *See Commonwealth v. Sexton*, 222 A.3d 405, 421 (Pa. Super. 2019) (upholding appellant's stalking conviction, and rejecting his sufficiency challenge, where the evidence presented at trial established that the appellant, after raping the victim, scrawled threatening and offensive "graffiti"—that made veiled references to the victim—near a bus stop that appellant knew the victim frequented, which demonstrated appellant's intent to place the victim in reasonable fear of bodily injury or to cause substantial emotional distress); *see also Commonwealth v. Baldassano*, 258 A.3d 547, 1040 MDA 2020 (Pa. Super. 2021) (unpublished memorandum at 11-12)[16] (concluding the Commonwealth presented sufficient evidence to sustain the appellant's conviction of stalking under section 2709.1(a)(2), where "[t]he jury heard audio recordings of 30 voicemail messages [a]ppellant left" in the mailbox of a woman who had rebuffed

_____

[16] Pursuant to Pa.R.A.P. 126(b), this Court's non-precedential memorandum decisions filed after May 1, 2019, may be cited for their persuasive value.

appellant's romantic advances, as well as "testimony about 80 hang up calls on [the woman's] birthday. The sheer quantity of the communications demonstrates a course of conduct[, and] the substance of the repeated messages demonstrates an intent to cause substantial emotional distress[.]"). Accordingly, Appellant's sufficiency challenge lacks merit and is frivolous.

The **Anders** brief next states Appellant believes the trial court erred in denying relief on his motion to dismiss the charges pursuant to Rule 600. **See Anders** Brief at 20-24. According to Appellant, the following time periods of pre-trial delay should be attributed to the Commonwealth for purposes of computation under Rule 600:

1. February 21, 2023, to August 1, 2023 (164 days);

2. September 14, 2023, to December 20, 2023 (98 days);

3. February 5, 2024, to March 25, 2024 (50 days);

4. June 17, 2024, to August 2, 2024 (20 days).

**Id.** (capitalization modified).

It is well settled that appellate courts "review Rule 600 decisions for an abuse of discretion[.]" **Commonwealth v. Lear**, 325 A.3d 552, 557 (Pa. 2024).

> An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion[,] the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused. The proper scope of review is limited to the evidence on the record of the Rule 600 evidentiary hearing, and the findings of the trial court. An appellate court

must view the facts in the light most favorable to the prevailing party.

***Commonwealth v. Hunt***, 858 A.2d 1234, 1238 (Pa. Super. 2004) (*en banc*) (citations, original brackets, quotation marks, and ellipsis omitted; formatting modified).

Additionally,

when considering the trial court's ruling, this Court is not permitted to ignore the dual purpose behind Rule 600. Rule 600 serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. However, the administrative mandate of Rule 600 was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth.

***Id.*** at 1239 (citation and brackets omitted); ***see also Commonwealth v. Selenski***, 994 A.2d 1083, 1088 (Pa. 2010) (stating, "Rule 600 serves to protect a defendant's speedy trial rights, as well as society's right to effective prosecution of criminal cases").

Rule 600 provides, in relevant part, as follows:

**(A)** Commencement of Trial; Time for Trial

**(1)** For the purpose of this rule, trial shall be deemed to commence on the date the trial judge calls the case to trial, or the defendant tenders a plea of guilty or *nolo contendere*.

**(2)** Trial shall commence within the following time periods.

**(a)** Trial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed.

Pa.R.Crim.P. 600(A)(1)-(2).

As our Supreme Court has explained,

[t]o determine whether Rule 600 has been violated, a "court must first calculate the 'mechanical run date,' which is 365 days after the complaint was filed," and then must "account for any 'excludable time' and 'excusable delay.'" ***Commonwealth v. Goldman***, … 70 A.3d 874, 879 (Pa. Super. 2013). "For purposes of paragraph (A), periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence. Any other periods of delay shall be excluded from the computation." Pa.R.Crim.P. 600(C)(1).

To this end, Rule 600 establishes two requirements that must be met for delay to count toward the 365-day deadline: (1) the delay must be caused by the Commonwealth; and (2) the Commonwealth must have failed to exercise due diligence. Otherwise, the delay is excluded from the calculation of the run date. Put differently, where delay is not caused by the Commonwealth or delay caused by the Commonwealth is not the result of lack of diligence, it must be excluded from the computation of the Rule 600 deadline.

***Commonwealth v. Johnson***, 289 A.3d 959, 981-82 (Pa. 2023).

As our Supreme Court explained in ***Lear***, "the causation analysis precedes the due diligence inquiry, and it is only when the Commonwealth both caused the delay and lacked due diligence that the delay is properly included in the Rule 600 calculation." ***Lear***, 325 A.3d at 560-61 n.7. Thus, the trial court considers only whether the Commonwealth acted with due diligence in those situations in which the trial court first determines it was the Commonwealth that caused the delay. ***See id.*** When some other factor, such as a factor out of the control of the Commonwealth, caused the delay, the

court does not consider the Commonwealth's due diligence, but rather adds the period of delay to the mechanical run date. ***See id.*** at 560.

Finally, we recognize that "any delay caused by the need to reschedule a trial because of a continuance attributable to the defense constitutes excludable time, even if the defendant was prepared to go to trial at an earlier date." ***Commonwealth v. Walker***, 331 A.3d 43, 46-47 (Pa. Super. 2025) (quotation marks omitted). With the foregoing principles in mind, we address Appellant's speedy-trial challenge.

The Commonwealth filed its criminal complaint against Appellant on September 30, 2022. Therefore, the mechanical run date for Appellant's trial, for purposes of Rule 600, was September 29, 2023.

In the ***Anders*** Brief, Attorney Werner provides this Court with the following computation of time regarding the one-year trial period, as per Rule 600(A)(2)(a):

> 1. September 30, 2022, to October 26, 2022 (27 days – [attributable to the] court): Criminal complaint filed, preliminary hearing and original papers received from M[agisterial District Judge] at Court of Common Pleas.
>
> 2. October 27, 2022, to November 22, 2022 (27 days – [attributable to the] defense): [Appellant] filed *pro se* Motion to Dismiss. Motion denied by court.
>
> 3. December 27, 2022, to January 5, 2023 (10 days – [attributable to the] defense): [Appellant] filed *pro se* Omnibus Motion. Motion denied by court.
>
> 4. February 17, 2023, to September 14, 2023 (210 days – [attributable to the] defense): Multiple defense motions [] denied by court.

- 24 -

5. September 18, 2023, to October 23, 2023 (36 days – [attributable to the] defense): [Appellant's motion for] bail [] and hearing.

6. November 14, 2023, to November 22, 2023 (8 days – [attributable to the] defense): [Appellant's motion for] reconsideration [of bail] and hearing.

7. December 20, 2023, to February 5, 2024 (48 days – [attributable to the] defense): [Appellant requested a] continuance of trial.

8. February 6, 2024, to March 25, 2024 (49 days – [attributable to the] court): Trial not reached.

9. March 26, 2024, to April 23, 2024 (28 days – [attributable to the] defense): [Appellant requested a] continuance of trial.

10. April 24, 2024, to June 17, 2024 (55 days – [attributable to the] defense): [Appellant requested a] continuance of trial.

11. June 18, 2024, to August 2, 2024 (46 days – [attributable to the] defense): Appellant threatened [the] trial judge [who was initially assigned to the case, the Honorable Alita A. Rovito, as well as the prosecutor] and [Appellant's prior defense] counsel.  Judge Rovito recused herself.  [An] out[-]of[-]county Senior Judge [was] appointed.

12. August 2, 2024, to February 3, 2025 (185 days – [attributable to the] defense): Defense Motion to Dismiss and Bail, new defense counsel appointed, multiple *pro se* defense motions, Defense Motion to Dismiss per Rule 600.

Total time attributed to [Appellant]/[the] defense: 653 days.  Total time elapsed from filing of criminal complaint to commencement of jury trial: 864 days.

Based solely on the delay caused [] by [Appellant]/[the] defense in this case, without counting delay by the court, the Commonwealth still had 154 days to bring [] Appellant to trial, which is well within the 365 days as required by Rule 600.

***Anders*** Brief at 21-24 (capitalization modified).

Our review of the record confirms Attorney Werner's foregoing calculation of time, and we agree with his determination that Appellant's Rule 600 claim lacks merit and is frivolous. ***See id.***

In his third and final issue, Appellant contends the trial court abused its discretion in rejecting his challenge to the weight of the evidence regarding his stalking conviction.[17] ***See Anders*** Brief at 18-19.

Our review of a challenge to the weight of the evidence is limited:

> [O]ur standard of review for a weight-of-the-evidence claim is an abuse of discretion. … An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. Appellate review of a weight claim is the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.

***Commonwealth v. Douglas***, 346 A.3d 825, 831 (Pa. Super. 2025) (citations, quotation marks, brackets, and paragraph break omitted).

---

[17] Appellant preserved his weight claim in his *pro se* post-sentence motion. ***See*** Post-Sentence Motion, 3/31/25, ¶ 11 (asserting, "the verdict was against the weight of the evidence because the Commonwealth failed to prove [Appellant's] intent to cause Victim bodily injury or substantial emotional distress[,] and the jury based its finding only on 32 missed calls placed by [Appellant] to Victim…." (capitalization modified)). On appeal, the Commonwealth claims Appellant's *pro se* post-sentence motion was a legal nullity—pointing to the prohibition against hybrid representation—and asserts, therefore, Appellant failed to preserve his weight of the evidence challenge. Commonwealth Brief at 6; ***see also Nischan***, ***supra*** (stating that a *pro se* motion filed while the defendant was represented by counsel is a legal nullity). However, we have already determined that Appellant's *pro se* post-sentence motion was not a legal nullity, as Trial Counsel had abandoned Appellant after sentencing. Accordingly, we address the merits of this claim for this reason, and as part of our independent review.

"A verdict is against the weight of the evidence only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice." ***Commonwealth v. Anderson***, 323 A.3d 744, 756 (Pa. 2024) (citation and internal quotation marks omitted). "One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice." ***Commonwealth v. Wright***, 314 A.3d 515, 524 (Pa. Super. 2024) (citation omitted).

Upon review, we discern no abuse of the trial court's discretion in denying Appellant's post-sentence motion and rejecting his weight claim. Appellant essentially asks this Court to reweigh the evidence presented at trial and reassess the credibility of the witnesses. This we cannot do. ***See Commonwealth v. Sanchez***, 262 A.3d 1283, 1288 (Pa. Super. 2021) ("Where issues of credibility and weight of the evidence are concerned, it is not the function of the appellate court to substitute its judgment based on a cold record for that of the trial court."); ***Commonwealth v. Scott***, 146 A.3d 775, 778 (Pa. Super. 2016) (stating an appellate court will not disturb the fact-finder's credibility findings that are supported by evidence of record).

The jury, as fact finder, was "free to believe all, none, or some of the evidence" and to assess the credibility of the witnesses. ***Commonwealth v. Salinas***, 307 A.3d 790, 795 (Pa. Super. 2023) (citation and brackets omitted). The jury ostensibly credited the testimony proffered by Victim and the

Commonwealth's other witnesses, which was within its sole purview. ***Id.*** The jury also considered physical evidence in the form of Victim's phone records—showing numerous texts and calls from Appellant—as well as video showing Appellant banging on the front door of Victim's residence. N.T., 2/10/25, Commonwealth Exhibits 5-9.

We decline Appellant's invitation to disturb the trial court's exercise of discretion in upholding the verdict, which is supported by the record and does not shock our collective conscience. ***Anderson***, 323 A.3d at 756. Accordingly, Attorney Werner is correct that Appellant's weight claim lacks merit and is frivolous.

## **Conclusion**

Based upon the foregoing, as all of Appellant's issues lack merit and are frivolous, and our independent review reveals no non-frivolous claims Appellant could raise, we grant Attorney Werner's petition to withdraw and affirm Appellant's judgment of sentence.

Petition to withdraw granted. Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/4/2026

- 28 -